**From:** Justin Blagg <jblagg@pulaskicounty.net>
**Sent:** Thursday, June 4, 2026 4:12 PM UTC
**To:** wendell.griffen@gmail.com
**Subject:** Re: PROPOSED EMERGENCY MORATORIUM ORDINANCE (sponsored by Justice of the Peace Blackwood)
**Attachments:** 26-I-45 Moratorium2.docx

Here is the formatted draft. If you don't mind looking it over to ensure accuracy with your draft language.
Thank you.

*Justin L. Blagg*
Director, Quorum Court/Parliamentarian
201 South Broadway, Suite 411
Little Rock, Arkansas 72201
501-218-5757 Cell - 501-340-8802 Office
jblagg@pulaskicounty.net

PULASKI COUNTY

**From:** Wendell Griffen <wendell.griffen@gmail.com>
**Sent:** Thursday, June 4, 2026 11:05 AM
**To:** Justin Blagg <jblagg@pulaskicounty.net>
**Cc:** Julie Blackwood <julieanneblackwood@gmail.com>
**Subject:** Re: PROPOSED EMERGENCY MORATORIUM ORDINANCE (sponsored by Justice of the Peace Blackwood)

Thank you..

Wendell Griffen
wendell.griffen@gmail.com
He/him/his

On Jun 4, 2026, at 10:20 AM, Justin Blagg <jblagg@pulaskicounty.net> wrote:

Received and I will start formatting it this morning.

*Justin L. Blagg*
Director, Quorum Court/Parliamentarian
201 South Broadway, Suite 411
Little Rock, Arkansas 72201
501-218-5757 Cell - 501-340-8802 Office
jblagg@pulaskicounty.net

PULASKI COUNTY

EXHIBIT
4

**From:** Wendell Griffen <wendell.griffen@gmail.com>
**Sent:** Wednesday, June 3, 2026 7:54 PM
**To:** Justin Blagg <jblagg@pulaskicounty.net>
**Cc:** Julie Blackwood <julieanneblackwood@gmail.com>
**Subject:** PROPOSED EMERGENCY MORATORIUM ORDINANCE (sponsored by Justice of the Peace Blackwood)

Justin, I am attaching a pdf of a drafted emergency land use moratorium ordinance that Justice of the Peace Blackwood has agreed to sponsor, and am copying her on this transmittal message. Please send us a reply acknowledging its receipt, format it, and distribute it among the members of the Quorum Court, to County Attorney Kemp, County Clerk Hollingsworth, and to County Judge Hyde.
I am also pasting the proposed ordinance below for your reading convenience.

Pulaski County Quorum Court Item: 26-I-
State of Arkansas
June 2026

By: Justice Blackwood

**EMERGENCY ORDINANCE**

**BE IT ENACTED BY THE QUORUM COURT OF PULASKI COUNTY, STATE OF ARKANSAS, AN ORDINANCE TO BE ENTITLED:**

**AN ORDINANCE ESTABLISHING A TWELVE-MONTH TEMPORARY MORATORIUM ON THE APPROVAL OF HIGH-IMPACT INDUSTRIAL AND HIGH-INTENSITY DIGITAL INFRASTRUCTURE FACILITIES IN THE UNINCORPORATED AREAS OF PULASKI COUNTY PENDING DEVELOPMENT OF A COMPREHENSIVE CONDITIONAL USE PERMIT AND NOTICE OF INDUSTRIAL IMPACT AND INTENT REGULATORY FRAMEWORK; DECLARING AN EMERGENCY; AND FOR OTHER PURPOSES**

ARTICLE 1. TITLE. This Ordinance shall be known as the "Pulaski County High-Impact Industrial and High-Intensity Digital Infrastructure Moratorium Ordinance."

ARTICLE 2. AUTHORITY. This Ordinance is adopted pursuant to:

(a) Arkansas Constitution Amendment 55.

(b) Arkansas Code § 14-14-801.

(c) Arkansas Code provisions governing county planning and land-use authority.

and is intended to preserve the public health, safety, and welfare while Pulaski County evaluates and adopts permanent regulations governing high-impact industrial and high-intensity digital infrastructure uses.

ARTICLE 3. LEGISLATIVE FINDINGS. The Quorum Court finds:

1. High-impact industrial and high-intensity digital infrastructure (HIDI) facilities, including, but not limited to, data centers, artificial intelligence computing facilities, cryptocurrency mining operations, cloud computing campuses, and related large-scale digital processing facilities, are industrial land uses with infrastructure demands significantly different from traditional commercial, office, warehouse, agricultural, and other industrial land uses with respect to utility demand, infrastructure requirements, environmental impacts, emergency response requirements, and fiscal impacts.

2. Such facilities may require extraordinary electrical demand, water consumption, telecommunications infrastructure, emergency response capacity, road improvements, and utility infrastructure investments.

3. Industrial facilities exceeding five (5) megawatts of electrical demand may require substations, transmission upgrades, distribution system modifications, backup generation systems, and specialized fire suppression systems.

4. HIDI facilities may require electrical loads ranging from tens to hundreds of megawatts.

5. A HIDI facility requiring fifty (50) megawatts of continuous electrical demand may consume approximately 438,000 megawatt-hours annually.

6. HIDI facilities exceeding one hundred (100) megawatts may consume electrical energy comparable to that used by substantial residential populations or major industrial operations.

7. Utility infrastructure necessary to support high-impact industrial and HIDI facilities may include dedicated substations, new transmission facilities, distribution system upgrades, switching stations, transmission interconnections, and long-term generation commitments.

8. HIDI facilities frequently contain substantial concentrations of electrical equipment, battery systems, transformers, backup

generation equipment, fuel storage systems, and cooling infrastructure.

9. Pulaski County presently lacks a comprehensive regulatory framework governing the siting, review, permitting, monitoring, and mitigation of impacts associated with high-impact industrial and HIDI facilities.

10. Existing development regulations do not adequately address:
   a. Electrical demand impacts;
   b. Utility infrastructure requirements;
   c. Water consumption impacts;
   d. Fire suppression and emergency response needs;
   e. Noise and thermal impacts;
   f. Transportation impacts;
   g. Fiscal impacts on County services;
   h. Ratepayer protection considerations.

11. Rural fire districts and emergency response providers serving unincorporated Pulaski County may face substantial operational and infrastructure demands associated with high-impact industrial and large-scale digital infrastructure facilities.

12. The County has a legitimate governmental interest in understanding and evaluating the impacts of concentrated electrical demand on infrastructure planning, public services, economic development, other land uses, and to what extent, if any, that proposed high-impact industrial and HIDI projects will result in material subsidization of required electric infrastructure by existing ratepayers (meaning allocation of high-impact industrial or HIDI project-specific infrastructure costs to the general rate base that would not be incurred but for high-impact industrial or HIDI projects).

13. The County has a legitimate governmental interest in determining whether and to what extent hyperscale infrastructure projects (meaning those above 50 megawatts) may require substantial utility investments extending beyond project boundaries, may affect adjacent land uses, roadway corridors, agricultural lands, residential lands, and environmentally sensitive areas.

14. The County has a legitimate governmental interest in determining whether and to what extent transmission corridors, substations, and utility infrastructure for high-impact industrial and

HIDI facilities may produce visual, noise, maintenance, safety, and land-use compatibility impacts.

15. High-impact industrial and digital infrastructure facilities may utilize significant quantities of water for cooling operations. Water consumption may vary substantially depending upon facility size, climatic conditions, cooling technology, operating schedules, and computing intensity. Certain facilities may utilize evaporative cooling systems, chilled-water systems, hybrid cooling systems, or other technologies requiring substantial water withdrawals.

16. Water demand associated with large-scale HIDI facilities may affect local water supply planning, infrastructure capacity, drought resiliency, and future development opportunities.

17. The County has a legitimate governmental interest in evaluating anticipated water demand and cooling technologies before development approvals are granted.

18. High-impact industrial and HIDI facilities frequently contain substantial concentrations of electrical equipment, battery systems, transformers, backup generation systems, fuel storage systems, and cooling systems. Certain battery technologies may present unique fire suppression and emergency response challenges. Emergency incidents involving high-impact industrial or digital infrastructure facilities may require coordination among fire departments, rural and primarily volunteer fire districts, emergency management agencies, utilities, and law enforcement agencies.

19. The County has a legitimate governmental interest in evaluating fire and emergency medical response capabilities before approving such facilities.

20. Cooling equipment, mechanical systems, backup generators, transformers, substations, and related high-intensity digital infrastructure may generate continuous or intermittent noise. Such impacts may affect neighboring residential, agricultural, institutional, recreational, and conservation land uses.

21. High-impact industrial and high-intensity digital infrastructure facilities may generate electronic waste, construction waste, and operational waste streams requiring proper management. Large-scale

digital facilities may alter development patterns, infrastructure demands, and land-use compatibility with surrounding areas.

22. The County has a legitimate governmental interest in ensuring compatibility between high-impact industrial and HIDI facilities and surrounding land uses.

23. High-impact industrial and HIDI development proposals may generate direct and indirect demands upon County services and infrastructure. County review of large-scale projects may require engineering, legal, environmental, planning, and consulting expertise. Existing county fee structures may not adequately recover costs associated with review and monitoring of high-impact industrial and HIDI facilities.

24. The County has a legitimate governmental interest in ensuring that project review and regulatory costs are not shifted to County taxpayers. Development of cost recovery mechanisms, review fees, escrow requirements, and monitoring and enforcement fees warrants further study.

25. Existing County ordinances and regulations were not envisioned or designed to address the unique characteristics of high-impact industrial and digital infrastructure facilities. County officials presently lack a standardized mechanism for receiving advance notice concerning utility infrastructure requirements associated with those facilities.

26. Advance notice of utility demands, water requirements, cooling technologies, transmission infrastructure needs, emergency response requirements, phased development plans, and environmental impacts is necessary for informed and fair-minded governmental decision-making.

27. A Notice of Industrial Impact and Intent (NOII) process and framework would provide transparency, advance notice, meaningful opportunities for public participation and intergovernmental cooperation, and will assist the County in evaluating and coordinating infrastructure impacts before high-impact industrial and HIDI development approvals are issued. Conditional Use Permit (CUP) procedures provide a recognized mechanism for evaluating site-specific impacts while preserving flexibility and ensuring due process.

28. The County is presently evaluating the adoption of a high-impact industrial and high-intensity digital infrastructure Conditional Use Permit (CUP) and Notice of Industrial Impact and Intent (NOII) regulatory framework to address these impacts.

29. Approval of high-impact industrial and high-intensity digital infrastructure facilities before completion of that review may result in irreversible infrastructure commitments, inadequate mitigation of impacts, and inconsistent land-use decisions.

30. A temporary moratorium is necessary to preserve the status quo while the County completes its planning and regulatory process.

ARTICLE 4. DEFINITIONS.

(A) High-Intensity Digital Infrastructure (HIDI) Facility.

Any facility or campus primarily engaged in:

1. Data center operations.
2. Artificial intelligence computing.
3. Cryptocurrency mining.
4. Blockchain processing.
5. Cloud computing.
6. High-performance computing; or
7. Similar digital processing activities

and having either:

a. Electrical demand of five (5) megawatts or greater; or

b. Water demand of one hundred thousand (100,000) gallons per day or greater.

(B) High-Impact Industrial Use. Any use meeting one or more of the following objective criteria:

(1) Electrical demand of 5 megawatts (MW) or greater; or

(2) Water use of 100,000 gallons per day or greater; or

(C) Moratorium. A temporary administrative suspension of the County's approval and issuance of permits, variances, conditional use permits, or site plan approvals for high-impact industrial and HIDI projects.

ARTICLE 5. MORATORIUM.

(A) During the term of this Ordinance, no County department, board, commission, official, or employee shall approve, issue, grant, or authorize:

1. Conditional use permits.
2. Development permits.
3. Land disturbance permits.
4. Site plan approvals.
5. Rezoning requests.
6. Subdivision approvals; or
7. Other discretionary County approvals

for construction, development, redevelopment, or expansion of high-impact industrial and high-Intensity digital infrastructure facilities within the unincorporated areas of Pulaski County.

(B) No application submitted after the effective date of this Ordinance shall be approved until expiration or termination of the moratorium.

ARTICLE 6. INTENT. In accordance with Arkansas Act 851 of 2023 (also known as the Arkansas Data Centers Act), this moratorium is not intended to be and should not be construed as a ban or prohibition on HIDI projects, but is intended to be a recognized permitted tool for preserving the status quo so the County can undertake and complete a period of regulatory study. The Quorum Court finds that a temporary moratorium is the least restrictive available means of preserving the status quo while development of a comprehensive regulatory framework is completed.

ARTICLE 7. STUDY AND REGULATORY DEVELOPMENT.

During the moratorium period, Pulaski County shall:

(A) Evaluate and develop:

1. A Conditional Use Permit (CUP) framework.

2. A Notice of Industrial Impact and Intent (NOII) process.
3. Utility coordination procedures.
4. Infrastructure impact standards.
5. Emergency response standards.
6. Water and wastewater review standards.
7. Fee and cost-recovery mechanisms.
8. Monitoring and enforcement provisions.
9. Public participation procedures; and
10. Other regulations necessary to protect the public health, safety, and welfare.

(B) Provide quarterly progress reports to the Quorum Court.

ARTICLE 8. DURATION.

This moratorium shall remain in effect for twelve (12) months from the effective date of this Ordinance unless repealed earlier by the Quorum Court. Draft CUP and NOII ordinances shall be submitted to the Quorum Court within 290 days from the effective date of this moratorium.

ARTICLE 9. NON-RETROACTIVITY. This Ordinance shall not apply to projects that: (a) have executed binding utility interconnection agreements; or (b) have received final County approvals; or (c) have submitted complete interconnection applications and received preliminary utility study acceptance before the effective date of this Ordinance.

ARTICLE 10. SEVERABILITY. If any provision of this Ordinance is held invalid, such invalidity shall not affect any remaining provision.

ARTICLE 11. REPEALER: All laws and parts of laws in conflict with this Ordinance are hereby repealed.

ARTICLE 12. EMERGENCY CLAUSE. The Quorum Court finds that active and anticipated proposals for high-impact industrial and high-intensity digital infrastructure facilities may proceed before Pulaski County has completed development of an adequate regulatory framework. Approval of such facilities without comprehensive standards could result in irreversible infrastructure commitments, inconsistent

permitting processes, and irreversible impacts to public services, utilities, transportation systems, emergency response capabilities, and the public welfare. Therefore, an emergency is declared to exist, and this Ordinance shall take effect immediately upon its adoption to preserve and protect the public health, safety, and welfare.

APPROVED AS TO FORM: ___________________________

COUNTY ATTORNEY

APPROVED: ___________________________

COUNTY JUDGE

ATTEST: ___________________________

CIRCUIT/COUNTY CLERK

Wendell Griffen
wendell.griffen@gmail.com
He/him/his