EXHIBIT
12



Wendell Griffen
1d ·

ASSETS.SPEAKCDN.COM
**assets.speakcdn.com**

WHY ITEM 26-I-71 DOES NOT ADEQUATELY PROTECT PULASKI COUNTY RESIDENTS

Pulaski County Justice of the Peace Douglas House has proposed Item 26-I-71 as an alternative approach to regulating large data centers in unincorporated Pulaski County.

His proposal contains some useful standards that address noise, setbacks, cooling systems, generator testing, traffic planning, emergency coordination and community notice.

Those provisions are worth considering.

But Justice House's proposed ordinance has serious weaknesses and does not provide the comprehensive public protections contained in 26-OR-19, the ordinance that the Quorum Court enacted by a 11-4 vote on September 22 which County Judge Barry Hyde vetoed on September 25.

Here is what the principal weaknesses of 26-I-71 mean in everyday language.

FIRST, IT REPLACES A PUBLIC PERMITTING PROCESS WITH AN ADMINISTRATIVE CHECKLIST.

Under 26-OR-19, a large digital infrastructure development would require a conditional-use permit. The Planning Board would conduct a public hearing, consider evidence and make written findings about roads, water, drainage, emergency services, noise, environmental effects, surrounding property and other



**Wendell Griffen**

1d ·

Under 26-OR-19, a large digital infrastructure development would require a conditional-use permit. The Planning Board would conduct a public hearing, consider evidence and make written findings about roads, water, drainage, emergency services, noise, environmental effects, surrounding property and other site-specific impacts.

Item 26-I-71 takes a different approach.

It states that the Planning Director “shall approve” a site plan when the ordinance and existing code requirements have been satisfied. This is similar to an alternative process that Entergy has publicly advocated.

That permitting could make approval largely an administrative checklist decision.

Residents would receive a developer-sponsored community meeting, but not an official public hearing. The development applicant would conduct the meeting, prepare the summary, and describe how it responded to public comments.

The Planning Board would not be required to hear evidence, independently evaluate competing claims, or make written findings answering residents’ concerns.

For people living near a proposed development, that means less public participation and less assurance that their concerns will influence the final decision.

A public meeting controlled by a developer does not have the same trustworthiness as a public hearing convened by a Planning Board required to make an impartial decision on whether a permit application



Wendell Griffen
1d ·

A public meeting controlled by a developer does not have the same trustworthiness as a public hearing convened by a Planning Board required to make an impartial decision on whether a permit application should be granted.

SECOND, IT MAY NOT APPLY TO THE DEVELOPMENT THAT CREATED THE NEED FOR REGULATION.

Justice House's proposed alternative ordinance exempts facilities possessing an approved site plan before the ordinance becomes effective, unless they later undertake a covered expansion.

Before this proposal advances, the County should publicly establish whether the AVAIO Leo project already has an approved site plan and, if so, precisely what development that approval authorizes.

If AVAIO already possesses the necessary site-plan approval, Item 26-I-71 may regulate future projects while leaving the proposed Wrightsville-area AVAIO-Leo development outside its protections.

Pulaski County residents deserve more than an ordinance that closes the gate on regulation after the largest project in our history has already passed through it.

THIRD, ITS COVERAGE RULES CONTAIN GAPS AND CONTRADICTIONS.

Justice House's proposed ordinance generally defines a regulated data center as one demanding more than 10 megawatts of utility power.

Wendell Griffen
1d ·

But another section says it applies to expansions increasing electrical demand by 5 megawatts or more.

Which threshold controls—five megawatts or more than ten?

The proposal also relies primarily on utility-power demand. It does not provide separate coverage thresholds for water consumption, building size, on-site generation or battery-storage capacity.

It also lacks a clear rule combining related buildings, parcels and development phases. A large campus should not escape regulation merely because it is divided into smaller components or is developed in stages.

Unclear definitions create loopholes. They also invite inconsistent decisions and litigation.

FOURTH, IT DOES NOT REQUIRE A TRUE SITE-SPECIFIC PUBLIC-IMPACT DECISION.

A data center that technically satisfies a setback or noise number can still create serious problems because of its location, scale and surrounding conditions.

A 500-foot setback may be sufficient in one place and inadequate in another. A road may meet ordinary standards but be unable to withstand years of heavy construction traffic. A fire district may serve a site on paper but lack the personnel, equipment, water supply, or training needed for responding to a major electrical, battery, fuel or generator emergency.

Wendell Griffen
1d ·

FOURTH, IT DOES NOT REQUIRE A TRUE SITE-SPECIFIC PUBLIC-IMPACT DECISION.

A data center that technically satisfies a setback or noise number can still create serious problems because of its location, scale and surrounding conditions.

A 500-foot setback may be sufficient in one place and inadequate in another. A road may meet ordinary standards but be unable to withstand years of heavy construction traffic. A fire district may serve a site on paper but lack the personnel, equipment, water supply, or training needed for responding to a major electrical, battery, fuel or generator emergency.

Item 26-I-71 does not require findings that:

• County roads and bridges can safely handle the development.

• Water and wastewater systems have adequate capacity.

• Fire departments and emergency responders have the necessary resources.

• Drainage and stormwater effects will not harm neighboring property.

• Public services can meet the development's demands.

• The project is compatible with surrounding homes, farms and communities.

Wendell Griffen
1d ·

• The combined effects of this project and other foreseeable development will not overwhelm public infrastructure.

Minimum standards are not a substitute for examining what a particular project will do in a particular place.

FIFTH, IT DOES NOT PROTECT TAXPAYERS FROM PROJECT-RELATED COSTS.

Justice House's proposed ordinance requires a $50,000 application fee. But it does not establish a review escrow, annual monitoring fee, or a reliable method for recovering the County's project-specific expenses.

It does not require a fiscal-impact analysis showing:

• What County services the development will require.

• What those services will cost.

• What ordinary tax revenue Pulaski County will receive.

• Whether any tax incentives or payment-in-lieu-of-taxes arrangement will reduce that revenue.

• Whether the developer will pay for road damage, emergency-response capacity, inspections, enforcement, and other project-related costs.

A $50,000 application fee may be too much for a simple review or far too little for a development requiring engineers, acoustical specialists, environmental analysis, fire-safety experts, inspectors, and attorneys.



Wendell Griffen

1d ·

The public should not be required to write a blank check for the difference.

SIXTH, IT HAS WEAK INSPECTION AND ENFORCEMENT PROVISIONS.

Justice House's proposed ordinance requires annual reports, but it does not clearly authorize comprehensive County inspections to verify what the facility operator reports.

It does not provide a complete enforcement system with notices of violation, hearings, stop-work orders, emergency orders, permit suspension or permit revocation.

Its only specific monetary penalty concerns a continuing noise violation. Even that provision raises a serious legal question because the proposed $50,000-per-month penalty appears inconsistent with the general limits Arkansas law places on county ordinance penalties.

Standards without lawful inspection and enforcement procedures can become promises on paper rather than protections in practice.

SEVENTH, IT PROVIDES NO FINANCIAL PROTECTION FOR CLOSURE OR ABANDONMENT.

Large data centers may contain generators, fuel tanks, batteries, cooling equipment, electrical infrastructure, and massive specialized buildings.

Justice House's proposed ordinance does not require a decommissioning plan. It does not require an independently calculated cleanup cost determination

Wendell Griffen
1d ·

SEVENTH, IT PROVIDES NO FINANCIAL PROTECTION FOR CLOSURE OR ABANDONMENT.

Large data centers may contain generators, fuel tanks, batteries, cooling equipment, electrical infrastructure, and massive specialized buildings.

Justice House's proposed ordinance does not require a decommissioning plan. It does not require an independently calculated cleanup cost determination. It does not require a bond, letter of credit, or other financial security.

If an operator closes, becomes insolvent or abandons the property, who will pay the cost to remove unsafe equipment, stabilize the site, and restore the land?

Without enforceable financial security requirements and protection, the answer could be Pulaski County taxpayers—or nobody.

That could leave neighboring residents living beside a deteriorating industrial site for years.

EIGHTH, ITEM 26-I-71 COULD UNDERMINE 26-OR-19.

Justice House's proposed alternative ordinance contains a general clause repealing conflicting ordinances. But it does not explain how it would operate alongside 26-OR-19 if the Quorum Court overrides Judge Hyde’s veto on October 27.

26-OR-19 requires a public conditional-use-permit process. 26-I-71 directs the Planning Director to approve a compliant site plan.

Wendell Griffen
1d ·

That conflict should not be left for developers, County officials, or courts to resolve later.

The better approach is straightforward:

The Quorum Court can use the worthwhile technical standards in Item 26-I-71 to strengthen 26-OR-19.

It should not use 26-I-71 to replace public hearings, independent review, written findings, inspections, enforcement, cost recovery, decommissioning security and site-specific accountability.

This is ultimately about people.

It is about whether residents can sleep in their homes without excessive industrial noise.

It is about whether firefighters and other emergency responders have the equipment and training needed to protect workers and surrounding communities.

It is about whether ambulances, school buses, and families can travel safely on County roads.

It is about protecting water supplies, drainage systems, neighboring property and the public treasury.

And it is about whether developers—or ordinary taxpayers—will pay the costs created by these projects.

Pulaski County should welcome responsible economic development.

But regulation must be more than a checklist, a community meeting, and an annual report filed by the

Wendell Griffen
1d ·

projects.

Pulaski County should welcome responsible economic development.

But regulation must be more than a checklist, a community meeting, and an annual report filed by the operator of a hyperscale digital computing facility.

The Quorum Court should override Judge Hyde's veto of 26-OR-19 on October 27. It can later consider adding the useful technical provisions from Item 26-I-71 through carefully drafted amendments.

We should strengthen public protections—not replace them with a weaker process.

Public impacts and costs require public revenue, enforceable safeguards, and public accountability.

Again, this is ultimately about people.

Item 26-I-71:

https://assets.speakcdn.com/assets/2954/26-i-71_subdivision_amendment.pdf

Ordinance 26-OR-19, introduced as Item 26-I-56B:

https://assets.speakcdn.com/assets/2954/26-i-56_-_regulating_high-intensity_digital_infrastructure.pdf

One County. One Community. One Future.

www.griffen4pulaskicounty.org

18 4 17