**United States District Court**
**Eastern District of Arkansas**
**Central Division**

| | |
|---|---|
| ADP Little Rock Data Hub, LLC,<br>*Plaintiff*,<br><br>v.<br><br>Pulaski County, Arkansas;<br>Barry Hyde, in his official capacity as Pulaski County Judge; and<br>Julie Blackwood, in her official capacity as Pulaski County Justice of the Peace,<br>*Defendants*. | No. 4:26-cv-1196-LPR |

**Pulaski County and Judge Hyde's**
**Response in Opposition to Motion for Preliminary Injunction and**
**Brief in Support of Their Motion to Dismiss**

## Table of Contents


Facts ..... 1

Legal Standard ..... 3

Argument ..... 5

I. Avaio lacks Article III standing for all its claims and failed to timely appeal the alleged FOIA violations ..... 5

A. Avaio lacks Article III standing for its non-FOIA claims ..... 6

B. Avaio lacks Article III standing to bring its FOIA claims and failed to timely appeal the alleged violations ..... 9

II. Each of Avaio's merits claims fail ..... 11

A. Avaio's federal preemption claim cannot succeed ..... 11

1. Avaio does not have a cause of action ..... 11

2. The Ordinance is not preempted ..... 12

B. The Ordinance does not violate the dormant Commerce Clause ..... 15

1. The Ordinance does not have direct extra-territorial effects ..... 15

2. The Ordinance does not discriminate against out-of-state commerce ..... 16

3. The Ordinance survives *Pike* balancing ..... 17

C. The Ordinance does not violate the Equal Protection Clause ..... 17

D. The Ordinance is not void for vagueness and thus does not violate the Due Process Clause ..... 19

E. The Ordinance is not retroactive and does not violate the Due Process Clause ..... 21

F. The Ordinance does not violate the Contract Clause ..... 22

1. Avaio does not have a cause of action....22

2. The Ordinance does not violate the Contract Clause.... 24

G. The Ordinance does not violate the Takings Clause....27

H. Avaio's state-law claims fail.... 28

1. The Court should decline to exercise its supplemental jurisdiction over Avaio's state-law claims.... 28

2. Avaio's claim that the Ordinance infringes on the Public Service Commission's exclusive jurisdiction fails.... 29

3. Avaio's FOIA claims fail....34

III. Avaio has not clearly shown that the remaining preliminary-injunction factors weigh in its favor....34

A. Avaio has not established irreparable harm....34

B. The balance of the harms and the public interest weigh in Defendants' favor.... 36

IV. If the Court enters a preliminary injunction, it must be narrowly tailored to the harm Avaio has actually shown....37

Conclusion....38

ADP Little Rock Data Hub, LLC ("Avaio") asks this Court to enjoin a county ordinance that does not apply to it. In August 2026, Avaio obtained Final Site Plan Approval for its data center. Doc. 1, ¶ 25. A month later, the Pulaski County Quorum Court enacted Ordinance 26-OR-19 (the "Ordinance") to address the noise, water, and emergency-services burdens that High-Intensity Digital Infrastructure can impose on the community. *Id.* ¶ 44; Ex. 1, at 2–3 (Copy of the Ordinance). But the Ordinance grandfathers in projects that, like Avaio's, obtained all required county approvals before its effective date. Ex. 1, at 32. That is the end of the matter. Because Avaio need not obtain a Conditional Use Permit, the Ordinance causes it no injury in fact. And whatever injury Avaio claims, it cannot establish traceability or redressability either. Avaio's claims also fail on the merits, and it has not made the clear showing of irreparable harm and favorable equities that extraordinary preliminary relief requires. At bottom, Avaio disagrees with the policy choices of Pulaski County's elected officials. That disagreement does not justify enjoining their work. The Court should grant Pulaski County and Judge Hyde's motion to dismiss and deny Avaio's motion for a preliminary injunction.

## Facts

Avaio "is building a data center project in Pulaski County, Arkansas." Doc. 1, ¶ 1. In early August 2026, after completing Pulaski County's "rules and requirements in effect at the time," Avaio obtained "Final Site Plan Approval from

the Pulaski County Planning and Development." Doc. 1, ¶¶ 25, 33; *see also id.*, Ex. 2. There were no additional county requirements for Avaio to complete.

In late September 2026, the Pulaski County Quorum Court enacted the Ordinance. Doc. 1, ¶ 44; *see also* Ex. 1. A few days later, County Judge Barry Hyde vetoed the Ordinance. Ex. 1, at 36; *see also* Doc. 1, Ex. 4 (Judge Hyde's veto memorandum). A month later, the Quorum Court overrode Judge Hyde's veto. Ex. 1, at 36. The Ordinance regulates "High-Intensity Digital Infrastructure (HIDI)" to preserve the public welfare, including to address noise pollution, wastewater contamination, and increased strain on fire and other emergency services. *See generally* Ex. 1, at 2–3 (purpose and legislative findings). To be sure, the Quorum Court had good reason to be concerned about HIDI use's effects. *See, e.g.*, Steven Gonzalez Monserrate, *The Staggering Ecological Impacts of Computation and the Cloud*, The MIT Press Reader (Feb. 14, 2022) (identifying noise-pollution issues from data centers);[1] *How data center noise is different from regular noise pollution, according to a St. Louis scientist*, KSMU (Sept. 25, 2026) (explaining that "[d]ata center noise is fundamentally different from other noises" and "can have far-reaching impacts on human health");[2] *Data Centers and Rivers: Protecting Clean Water and River Health*, American Rivers 4 (Apr. 2026) (explaining that data

---

[1] https://thereader.mitpress.mit.edu/the-staggering-ecological-impacts-of-computation-and-the-cloud/.

[2] https://www.ksmu.org/news/2026-09-25/how-data-center-noise-is-different-from-regular-noise-pollution-according-to-a-st-louis-scientist.

centers water usage can reduce fish and wildlife populations, increase water demand, and decrease water quality, among other things).[3] Thus, most entities can only engage HIDI use of land after obtaining a "Conditional Use Permit" under the Ordinance. Ex. 1, at 6.

Not all projects, however, need to obtain a Conditional Use Permit. The Ordinance provides that if, before the Ordinance's effective date," "[a] High-Intensity Digital Infrastructure Use" had "obtained all Final County Approvals required under County law" at the time of approval, it is "not … required to obtain a new Conditional Use Permit" under the Ordinance. Ex. 1, at 32.

Disagreeing with the policy choices of Pulaski County's elected officials, Avaio sued Pulaski County, Judge Hyde, and Justice of the Peace Julie Blackwood and now seek a preliminary injunction. *See* Docs. 1, 8.

## Legal Standard

For Pulaski County and Judge Hyde's motion to dismiss, Avaio "must show that [it] 'is entitled to relief, by alleging sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Soueidan v. St. Louis Univ.*, 926 F.3d 1029, 1034 (8th Cir. 2019) (citation omitted).

As for Avaio's preliminary-injunction request, preliminary injunctions are "an extraordinary remedy" that are "never awarded as of right." *Kohls v. Ellison*,

---

[3] https://www.americanrivers.org/wp-content/uploads/2026/05/AR_DataCenterToolkit_Final_Digital.pdf.

166 F.4th 728, 732 (8th Cir. 2026) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). That's because "[a] preliminary injunction forces a party to act or desist from acting, not because the law requires it, but because the law *might* require it. In this sense, it is like judgment and execution before trial," so courts should be cautious before "exercis[ing] that type of power." *Gray v. Mallory*, No. 4:25-cv-1057-LPR, 2025 U.S. Dist. LEXIS 229156, at *5 (E.D. Ark. Nov. 21, 2025) (quoting *Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 200 (3d Cir. 2024)).

To obtain a preliminary injunction, a plaintiff must "clear[ly] show[]," *Winter*, 555 U.S. at 22 (citation omitted), that the following four factors "weigh in [its] favor": (1) it has a likelihood of success on the merits, (2) it is likely to "suffer irreparable harm [absent] preliminary relief," (3) the "balance of the equities tips in [its] favor," and (4) the public interest favors an injunction, *MPAY Inc. v. Erie Custom Comput. Apps., Inc.*, 970 F.3d 1010, 1015 (8th Cir. 2020) (citation omitted). And when a county ordinance is challenged, like here, the plaintiff has a higher-than-normal burden to establish a likelihood of success on the merits. That's because county ordinances, like state statutes, are "presum[ed]" to be enacted through the "reasoned democratic process." *D.M. v. Minn. State High Sch. League*, 917 F.3d 994, 1000 (8th Cir. 2019) (quoting *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 732 (8th Cir. 2008) (en banc)). Under that "more rigorous standard," the plaintiff cannot prevail on a 50%-plus-one showing

of success; instead, it must show that it is "'*likely* to prevail' on [its] claims." *D.M.*, 917 F.3d at 999 (emphasis added) (quoting *Rounds*, 530 F.3d at 732).[4]

## Argument

Avaio lacks Article III standing to bring its claims, its claims fail on the merits, and it cannot show that the non-merits preliminary-injunction factors weigh in its favor. Therefore, the Court should grant Pulaski County and Judge Hyde's motion to dismiss and deny Avaio's preliminary-injunction motion.

### I. Avaio lacks Article III standing for all its claims and failed to timely appeal the alleged FOIA violations.

Avaio must show it has "Article III standing to sue each defendant." *Calzone v. Hawley*, 866 F.3d 866, 869 (8th Cir. 2017) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). Because Avaio cannot show that it has standing against Pulaski County or Judge Hyde "for each claim" pressed and "each form of relief" sought, the Court lacks Article III jurisdiction. *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 440 (2017).

Article III requires three elements: (1) an injury in fact, (2) "the injury [must be] fairly traceable to the challenged action of the defendant," and (3) it must be "likely" that a favorable decision will redress the injury. *Balogh v. Lombardi*, 816 F.3d 536, 541 (8th Cir. 2016) (cleaned up). Avaio lacks standing for all its claims.

---

[4] Avaio indicates that the higher likelihood-of-success standard does not apply because of the alleged FOIA violations. *See* Doc. 9, at 3. But Avaio's approach would require the Court to analyze the merits of the FOIA allegations *before* determining the likelihood-of-success standard. That's analytically out of step with the required test. In short, Avaio puts the merits-analysis cart before the likelihood-of-success-standard horse.

**A. Avaio lacks Article III standing for its non-FOIA claims.**

Initially, Avaio lacks all three elements of standing to bring its non-FOIA claims against the Ordinance.

*Avaio has not suffered an injury in fact related to any Defendant.* To establish an injury in fact, Avaio must show it "has a personal stake in the outcome of the controversy" by way of a "concrete and particularized" injury that is "actual or imminent." *L.H. v. Indep. Sch. Dist.*, 111 F.4th 886, 892 (8th Cir. 2024) (citation omitted). So when the challenged law does not apply to the plaintiff, it "cannot show an 'injury in fact.'" *Barron v. S.D. Bd. of Regents*, 655 F.3d 787, 794 (8th Cir. 2011). That's Avaio's problem here. The Ordinance doesn't apply to it.

Section 17.2 grandfathers in previously approved projects and provides that if an entity's "project obtained all Final County Approvals required under County law" "before the [Ordinance's] effective date," then the project "shall not be required to obtain a new Conditional Use Permit solely by reason of the [Ordinance's] adoption." Ex. 1, at 32. In August 2026—before the Ordinance's effective date—Avaio "obtained Final Site Plan Approval from the County." Doc. 1, ¶ 25; *see also id.* ¶ 177 (stating that the Ordinance "was adopted after [Avaio] received site plan approval to build"); *id.*, Ex. 2. Therefore, Avaio falls within Section 17.2's grandfather clause, it does not need to seek a Conditional Use Permit under the Ordinance, and it is therefore not injured by the Ordinance.

*Any injury is not traceable or redressable by Judge Hyde.* Even if Avaio were injured, it does not clearly identify which provisions of the Ordinance cause its alleged injury, though it appears Avaio's concern is primarily with provisions that reference electricity. *See* Doc. 1, ¶ 49 (describing the Ordinance's "primary purpose" as addressing electricity issues); Doc. 9, at 33 (describing Avaio's alleged irreparable harm as having to conduct "studies pertaining to electricity transmission and pricing"). But whatever Avaio's alleged injury, it has a problem. Judge Hyde does not enforce the provisions that cause the alleged injury. The County Judge is mentioned only two times in the Ordinance (other than the approval-signature line), both times related to appointing a hearing officer when "[a] person [is] aggrieved by the fiscal official's determination" and decides to appeal the determination. Ex. 1, at 24. Avaio's complaint and preliminary-injunction filings do not challenge the County Judge's authority to appoint hearing officers.

Because Judge Hyde "does not possess any … authority to enforce" the provisions that Avaio challenges, its alleged "injury is not fairly traceable to" the County Judge. *Balogh v. Lombardi*, 816 F.3d 536, 543 (8th Cir. 2016) (citing *Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 957–58 (8th Cir. 2015)). "For the same reasons," Avaio cannot show any remedy from the Court will redress its alleged injury because "[t]he redressability prong is not met when a plaintiff seeks relief against a defendant with no power to enforce a challenged"

law. *Digital Recognition Network*, 803 F.3d at 958 (quoting *Bronson v. Swensen*, 500 F.3d 1099, 1111 (10th Cir. 2007)).

To avoid its traceability and redressability problems, Avaio may assert that there is standing because the County Judge appoints the officials who do enforce the Ordinance. *See* Doc. 9, at 29 (asserting that "the Ordinance confers excessively broad discretion to officials acting at the pleasure of the Pulaski County Judge"). But appointing officials who will ultimately enforce the challenged law is not the same as enforcing the law. *See Balogh*, 816 F.3d at 543–44, 546 (finding plaintiff failed to establish traceability and redressability, even though the defendant had authority to appoint the officials who implemented the challenged law).

*Any injury is not traceable or redressable by Pulaski County.* Similarly, Avaio lacks standing against Pulaski County. That's because the liability of the County rises or falls with the liability of the official-capacity defendants. *See McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005) (collecting cases). As explained above, Judge Hyde is not liable because Avaio lacks standing against him. Avaio also lacks standing against Justice Blackwood because she is a single member of the multi-member Quorum Court and thus any ruling against her cannot redress Avaio's alleged injury. *Cf. Ashley v. U.S. Dep't of the Interior*, 408 F.3d 997, 1003 (8th Cir. 2005) (finding no redressability when "the plaintiffs … 'seek to change the defendant's [*i.e.*, Justice Blackwood's] behavior *only as a means* to alter the conduct of a third party [the entire Quorum Court]"); *Duit Constr. Co. v.*

*Bennett*, 796 F.3d 938, 941 (8th Cir. 2015) (explaining that when a defendant (*e.g.*, Justice Blackwood) doesn't "control" the nonparty's (*e.g.*, the entire Quorum Court's) practices redressability is "totally speculative" and thus there is no Article III standing).[5]

* * *

Avaio fails to establish every element of standing on all its non-FOIA claims, so the Court should dismiss those claims and deny the preliminary-injunction motion related to them because Avaio is unlikely to succeed on the merits.

**B. Avaio lacks Article III standing to bring its FOIA claims and failed to timely appeal the alleged violations.**

Avaio also lacks standing to bring its FOIA claim because it cannot meet Article III's requirements and failed to timely bring its FOIA appeal.

*First, Avaio did not suffer an injury.* Only an Arkansas "citizen" who is "denied the rights granted" by the FOIA are allowed to "appeal immediately from the denial." Ark. Code Ann. § 25-19-107(a). But Avaio was not denied any rights under the FOIA's open-records provisions because it did not request any records. Its attorney did, and he did not indicate that request was made on Avaio's behalf. *See* Doc. 1, Ex. 6. Nor has Avaio offered evidence that it is a citizen of Arkansas. *Compare GMAC Com. Credit LLC v. Dillard Dep't Stores, Inc.*, 357 F.3d 827, 828–29 (8th Cir. 2004) (explaining that, for diversity jurisdiction, an LLC shares

[5] Pulaski County and Judge Hyde adopt by incorporation Justice Blackwoods' arguments on this—and every other—issue to the extent those arguments are not inconsistent with the County and Judge Hyde's.

citizenship with its members), *with* Doc. 1, ¶ 1 (noting only that Avaio "is a limited liability company organized under Delaware law").

*Second, any injury is not traceable to or redressable by Judge Hyde.* That's because Judge Hyde did not take any of the actions Avaio alleges harms it. *See Balogh*, 816 F.3d at 543; *Digital Recognition Network*, 803 F.3d at 958. All the records and open-meetings allegations are directed at Justice Blackwood and nonparties. *See* Doc. 9, at 20–26 (identifying "Justice Blackwood" and unidentified "other records custodians" as allegedly violating the FOIA).

*Third, Avaio's FOIA appeal was untimely, so this Court lacks jurisdiction over the FOIA claims.* Under the FOIA, courts have "jurisdiction" to "hear and determine the case" of an alleged denial of FOIA rights. Ark. Code Ann. § 25-19-107 (a)–(b). One limitation on that jurisdiction is that plaintiffs must "appeal immediately from the denial" of their rights. *Id.* § 25-19-107(a). That limitation must be "[c]onstru[ed] … just as [it] read[s]" and "giv[en] … [its] ordinary and usually accepted meaning in the common language." *First Ark. Bail Bonds, Inc. v. State*, 284 S.W.3d 525, 529 (Ark. 2008). When a predicate action is "required by statute" to be taken "immediately," failure to act immediately is insufficient. *Id.*; *see also Immediately*, Webster's Unabridged Dictionary (2d ed. 1997) (defining "immediately" as "without lapse of time; without delay; instantly; at once").

Mr. Jones made his FOIA request on October 19, 2026. *See* Doc. 1, ¶ 103. The response was due, at the latest, on October 22, 2026. *See* Ark. Code Ann.

§ 25-19-105(e). Mr. Jones received an allegedly incomplete response, which also notified him of the alleged open-meetings violations. *See* Doc. 1, Ex. 7. Instead of Mr. Jones appealing immediately, Avaio appealed the denial a week later by suing Defendants in this Court. *See* Doc. 1. That appeal was not "immediate," under the common usage of that word. *See First Ark.*, 284 S.W.3d at 529. The Court therefore lacks jurisdiction over Avaio's FOIA claims because of Avaio's failure to timely appeal.[6]

Therefore, Avaio's FOIA claims should also be dismissed for lack of standing and for failure to timely appeal, and it is unlikely to succeed on the merits.

## II. Each of Avaio's merits claims fail.

Each of Avaio's merits claims fail as a matter of law, so it is unlikely to succeed on the merits, and the claims should be dismissed.

### A. Avaio's federal preemption claim cannot succeed.

Avaio's federal preemption claim fails for two reasons: it does not have a cause of action, and the Ordinance is not preempted.

#### 1. Avaio does not have a cause of action.

"[U]nder 42 U.S.C. § 1983, [Avaio] must 'allege the violation of a right secured by the Constitution and laws of the United States.'" *Lamar v. Hutchinson*, No. 4:21-cv-529-LPR, 2021 U.S. Dist. LEXIS 167441, at *7–8 (E.D. Ark. Sept. 3,

---

[6] As explained below, what constitutes an "immediate" appeal has not been litigated in Arkansas courts, which is a reason the Court should decline to exercise its supplemental jurisdiction over the FOIA claims. *See infra* pp. 29–30.

2021) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). But the Supremacy Clause itself "is not a source of any federal rights." *Id.* at *8 (quoting *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324–25 (2015)). Instead, Avaio must identify a federal right and then "the Supremacy Clause 'creates a rule of decision'" to adjudicate the allegedly conflicting state and federal provisions. *Ark. United v. Thurston*, 146 F.4th 673, 678 (8th Cir. 2025) (citation omitted).

Avaio's preemption argument references general provisions of the Federal Power Act without identifying any provision that creates rights personal to it. It certainly hasn't shown that Congress "clearly intended to create an enforceable federal right" in any provision of the Federal Power Act. *Doe v. Gillespie*, 867 F.3d 1034, 1039 (8th Cir. 2017) (citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002)). Avaio's preemption argument therefore fails for lack of a cause of action.

**2. The Ordinance is not preempted.**

Even if Avaio didn't have a cause-of-action problem, its claim fails. The Federal Power Act divides "authority between state and federal regulators." *Hughes v. Talen Energy Mktg., LLC*, 578 U.S. 150, 163 (2016). Under that division, the Federal Energy Regulatory Commission has "jurisdiction over 'the [interstate] transmission of electric energy and … the [interstate] sale of electric energy at wholesale,'" while the State retains authority over "most matters they had traditionally regulated, including local electric utility rates and the siting of power plants." *North Dakota v. Heydinger*, 825 F.3d 912, 914 (8th Cir. 2016) (alteration

in original) (quoting 16 U.S.C. § 824(b)(1)). Thus, even state laws that "incidentally affect areas within FERC's domain" are not preempted. *Hughes*, 578 U.S. at 164. That's because States have "traditionally regulated" utilities, *Heydinger*, 825 F.3d at 914, so courts apply "the presumption against preemption," *Iowans for Alternatives to Smoking & Tobacco, Inc. v. Mosiman*, 183 F.4th 1040, 1051 (8th Cir. 2026).

Avaio asserts that the Ordinance "obstructs FERC's determinations" in two ways: (1) its determination about "what sort of load[s] [are] appropriate to interconnect to the national power grid," and (2) its determination about "how large loads like [Avaio's] data center should be interconnected." Doc. 9, at 8 (emphasis omitted). Avaio appears to tie these determinations to FERC's exclusive jurisdiction over the interstate wholesale of electricity by defining Avaio's data center as a "large load," Doc. 9, at 6—a term that FERC appears to have defined without any analysis or explanation in a single order, *see* 195 FERC 61,212, ¶ 58. Avaio's argument fails for three reasons.

First, Avaio is a retail purchaser of electricity and does not interact with the wholesale market that is under FERC's jurisdiction. Avaio specifies that its connection to the electric grid is through an "Agreement for Electric Service" with "Entergy Arkansas" for the "retail" sale of electricity. Doc. 9, at 15. Thus, to the extent Avaio's argument is about the Ordinance's effect on it, the Ordinance is only affecting the *retail* sale, not *whole*sale, of electricity and is thus outside

FERC's domain. *See Hughes*, 578 U.S. at 154 (explaining that "any retail sale … of electricity" is left "to the States alone" (quoting *FERC v. Elec. Power Supply Ass'n*, 577 U.S. 260, 265 (2016)).

Second, to avoid that problem, Avaio may try to assert that Entergy Arkansas engages in the wholesale market. *See* Doc. 1, ¶ 68. But Avaio does not have third-party standing to raise that claim. *See Swanson v. Hilgers*, 151 F.4th 992, 996 (8th Cir. 2025) (explaining that third-party standing is only allowed when a litigant has "a close relationship to the third party" and the third party's ability to sue on its own behalf is hindered).

Third, even if Avaio clears those hurdles, the Ordinance does not intrude on FERC's exclusive domain over wholesale markets or transmission. To argue otherwise, Avaio points to two provisions of the Ordinance—Section 6.2(c) and Section 7(a). *See* Doc. 9, at 6; Ex. 1, at 7, 9. But Section 6.2 is a 14-point list of requirements for applications for a Conditional Use Permit, one of which requires the applicant to provide information showing it will have sufficient power, such as an "electrical-load analysis," correspondence with utilities, and alternative means of power. Ex. 1, at 7. Relatedly, Section 7(a) provides that the application "shall be approved only" if the applicant "establishe[s]" it will have the "[i]nfrastructure" to operate, including "adequate electrical," among other utilities. Ex. 1, at 9. Neither provision has anything to do with interstate wholesale—that is, the "sale of electric energy to any person for resale." 16 U.S.C. § 824(d). To be

sure, Avaio intends to *use* rather than *sell* the electricity they are purchasing from Entergy Arkansas. *See* Doc. 9, at 15 (describing the Agreement of Electric Service). Nor do the asserted provisions deal with interstate transmission of electricity, which occurs when electricity is "transmitted from a State and consumed at any point outside thereof." 16 U.S.C. § 824(c). Even if the Ordinance had some remote, incidental effect on the wholesale market or transmission, that is insufficient to find preemption. *See Hughes*, 578 U.S. at 164. The Ordinance is not "aimed directly"—or even indirectly—at FERC's authority, so Avaio's preemption claim fails. *Id.* (emphasis omitted) (quoting *Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 385 (2015)).

**B. The Ordinance does not violate the dormant Commerce Clause.**

Next, Avaio argues that the Ordinance violates the dormant Commerce Clause, though Avaio avoids that term.[7] Avaio does not clearly identify which line of dormant Commerce Clause jurisprudence it relies on, but it uses language from all three: discrimination against interstate commerce, extraterritorial effects, and *Pike* balancing. Avaio does not meet its burden for any of the three tests.

**1. The Ordinance does not have direct extraterritorial effects.**

In just a few sentences, Avaio asserts that the Ordinance results in "extraterritorial effects" or "extraterritorial grid-level effects." Doc. 9, at 9–10. But the

[7] This Court has rightly noted that "[m]any of our Nation's leading jurists have credibly questioned whether the so-called Dormant Commerce Clause is actually a real constitutional thing." *Novartis Pharms. Corp. v. Griffin*, 833 F. Supp. 3d 956, 959 n.6 (E.D. Ark. 2026) (citations omitted).

extraterritorial effect of a law only violates the dormant Commerce Clause when the law "directly controls commerce occurring wholly outside the boundaries of a State." *Novartis Pharms. Corp. v. Hanaway*, 180 F.4th 1097, 1107 (8th Cir. 2026). Thus, if a law regulates intrastate transactions and "ha[s] only incidental effects on interstate commerce," it does not violate the dormant Commerce Clause. *Id.* (citing *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 373–76 (2023)). And that's what the Ordinance does. It regulates an intrastate transaction: an application for a Conditional Use Permit. The fact others may react to that intrastate transaction, even if the reaction occurs outside Arkansas, does not cause the Ordinance to violate the dormant Commerce Clause. *See id.* at 1107–08.

**2. The Ordinance does not discriminate against out-of-state commerce.**

Avaio also urges that the Ordinance discriminates against interstate commerce because "[i]t carves out 'ordinary' uses of electricity and water for 'differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.'" Doc. 9, at 10 (citation omitted). And assuming its use is not exempt from the Ordinance, Avaio—"an out-of-state data center company"—is being regulated and therefore discriminated against. *Id.* But the question isn't whether an out-of-state entity operating in state is affected, the question is whether the Ordinance either "facially discriminate[s] against interstate commerce" or "otherwise indicate[s] a preference for in-state entities." *Novartis*, 180 F.4th at 1108. The Ordinance applies equally to all entities it

regulates, both in-state and out-of-state entities. The fact that data centers happen to be operated by out-of-state entities cannot alone implicate the dormant Commerce Clause. *See id.* (even though "Missouri's entire prescription drug supply comes from out-of-state, such claims of disparate treatment between interstate and local commerce [are] meritless" (alteration in original)).

**3. The Ordinance survives *Pike* balancing.**

In a final paragraph with little analysis, Avaio asserts that the Ordinance violates *Pike* balancing. *See* Doc. 9, at 11. To succeed under *Pike*, Avaio must show that the Ordinance imposes a "burden … on [interstate] commerce [that] is clearly excessive in relation to the putative local benefits." *Novartis*, 180 F.4th at 1109. Avaio doesn't identify any burden on interstate commerce, other than assuming the Federal Power Act preempts the Ordinance. *See* Doc. 9, at 11. That's because there is no burden, and certainly no burden that outweighs the local benefits. *See supra* pp. 2–3 (identifying the Quorum Court's well-founded concern over HIDI uses' effects on noise pollution, wildlife, wastewater, and more).

**C. The Ordinance does not violate the Equal Protection Clause.**

Avaio does not argue that the Ordinance "proceeds along suspect lines []or infringes fundamental constitutional rights," so they must show it is likely that "there [is no] reasonably conceivable state of facts that could provide a rational basis for the classification." *Danker v. City of Council Bluffs*, 53 F.4th 420, 423 (8th Cir. 2022) (citation omitted). And under rational-basis review, the challenged classification "bear[s] a strong presumption of validity." *Id.*

Avaio points out that the classification of certain buildings, such as "office buildings" and "governmental facilities," are not subject to the Ordinance if they are operated in the "[o]rdinary" course—that is, the buildings do not have the "principal use," as opposed to the "merely incidental or accessory" use, of "digital computing." Ex. 1, at 5.[8] But the Quorum Court explained why it thought that distinction was necessary. It explained, among other things, that the entities regulated by the Ordinance have a "materially greater" impact on infrastructure than other land uses; that the impact "var[ies] substantially by location"; and that the potential for "continuous, tonal, low-frequency, impulsive, or intermittent noise" can have deleterious effects. Ex. 1, at 2; *see also supra* pp. 2–3 (identifying articles and studies confirming the Quorum Court's concerns). Thus, Avaio is not similarly situated to others that are not regulated by the Ordinance, and its equal-protection claim fails.

Avaio confronts none of these reasons for the Ordinance, any of which would pass rational-basis review. Instead, it tries to paint the Ordinance's passage as an attack on Avaio itself because the conversation about the Ordinance centered on Avaio. But that should be no surprise. Whenever a new industry enters the marketplace, regulations related to that enterprise will be discussed in connection with the only reference point—the new industry (*i.e.*, Avaio). If Avaio could use

[8] Avaio asserts that "ordinary" does not have a definition. Doc. 9, at 16. Not so. A use is "ordinary" when digital computing is "merely incidental or accessory to [the] principal use." Ex. 1, at 5.

that fact to mount an equal-protection claim, then almost every new industry could avoid regulation.

### D. The Ordinance is not void for vagueness and thus does not violate the Due Process Clause.

Avaio also argues that several terms in the Ordinance are void for vagueness. Avaio challenges one set of terms because they are "not define[d]" and thus Avaio allegedly does not know how to comply. Doc. 9, at 28–29 ("fails to define," "not define[d]," "undefined"). Avaio claims to not understand several terms in Sections 10.4 and 12.4: "required electrical infrastructure," "complete," "available," "competent evidence," and "material." Doc. 9, at 28. And Avaio challenges another set of terms as providing "broad discretion to officials." Doc. 9, at 29. Both sets of terms survive the void-for-vagueness challenge.

Laws are not vague merely because they are "broad" or have "[un]define[d]" terms. *Iowa Safe Sch. v. Reynolds*, 172 F.4th 589, 596 (8th Cir. 2026). And when, as here, the challenged law does not include criminal penalties or First Amendment interests, "due process requires less specificity." *Id.* Thus, a challenged provision does not violate the Due Process Clause if (1) ordinary people with "a reasonable opportunity to understand" can grasp what is required and (2) the challenged provision does not "authorize or even encourage arbitrary and discriminatory enforcement." *Id.* at 597 (citation omitted).

Turning first to the undefined terms, they are given their "common and ordinary meaning, taking into account the context in which the undefined term is

used." *Id.* at 596. That standard is easily met. Section 10.4 provides that before a permit holder begins "operations," it must show "that required electrical infrastructure is complete or available." Ex. 1, at 15. In context, this means the permit holder must show that the "necessary"[9] electrical "resources required for an activity"[10] (*i.e.*, the permit holder's "operations") already exist[11] or are "accessible."[12] The way a permit holder makes that showing is through "competent evidence"—that is, evidence with the "ability"[13] to prove that required electrical infrastructure is complete or available.

And Section 12.4 uses "material" as an adjective before several words, such as "difference," "change," "complaints," and "error." Ex. 1, at 27–28. "Material" is something "having real importance or great consequences."[14] It is thus akin to Federal Rule of Civil Procedure 56's reference to "material fact[s]." Fed. R. Civ. P. 56(a). Material isn't defined in Rule 56 either, and counsel is unaware

---

[9] *Required*, Merriam-Webster, https://www.merriam-webster.com/dictionary/required (last accessed Nov. 13, 2026).

[10] *Infrastructure*, Merriam-Webster, https://www.merriam-webster.com/dictionary/infrastructure (last accessed Nov. 13, 2026).

[11] *Complete*, Merriam-Webster, https://www.merriam-webster.com/dictionary/complete (last accessed Nov. 13, 2026) ("having all necessary parts, elements, or steps").

[12] *Available*, Merriam-Webster, https://www.merriam-webster.com/dictionary/available (last accessed Nov. 13, 2026).

[13] *Competent*, Merriam-Webster, https://www.merriam-webster.com/dictionary/competent (last accessed Nov. 13, 2026).

[14] *Material*, Merriam-Webster, https://www.merriam-webster.com/dictionary/material (last accessed Nov. 13, 2026).

of any case in which Rule 56 has been challenged as (much less held to be) void for vagueness.

Avaio does not explain why it's impossible to understand these common words but instead relies on a nonspecific, unexplained paragraph in a declaration that the Ordinance in general is insufficient to guide Avaio. *See* Doc. 9, at 28–29 (quoting Doc. 8, Ex. 1, ¶¶ 19, 21). That's not enough to establish that any of the challenged words are vague. And even if the declaration were more specific, it wouldn't matter. That's because vagueness is a question of law for the Court. *See United States v. Frison*, 825 F.3d 437, 441 (8th Cir. 2016).

Avaio then turns to phrases it says "confer[] excessively broad discretion" on county officials. Doc. 9, at 29. But none of those phrases confer authority. They are instead references to preexisting processes in which county officials have remaining "discretionary" action to take. *See id.* Avaio has not challenged any of those preexisting processes nor explained their relevance here.

In sum, Avaio's void-for-vagueness challenge is likely to fail.

**E. The Ordinance is not retroactive and does not violate the Due Process Clause.**

Avaio also implies that the Ordinance violates due process because it is retroactive but never explains how it applies retroactively or why its retroactivity would be unconstitutional. *See* Doc. 9, at 29–30. All Avaio does is note that there is a "presumption against retroactivity." Doc. 9, at 30. First, as explained above, the Ordinance applies only to projects *after* its effective date. *See supra* pp. 6–7.

That's prospective, not retroactive. Second, retroactivity alone does not make a statute unconstitutional. *Cf. United States v. Darusmont*, 449 U.S. 292, 298–99 (1981) (noting that a law's "retroactiv[ity]" is not a "*per se*" due-process violation).

**F. The Ordinance does not violate the Contract Clause.**

Next, Avaio asserts that the Ordinance violates the Contract Clause. The Contract Clause prohibits States from "pass[ing] any … Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10, cl. 1. Avaio's claim has two problems—Avaio does not have a cause of action and, even if it did, Avaio cannot show it is likely to succeed on the merits of the analysis.

**1. Avaio does not have a cause of action.**

"[W]hether a cause of action for a Contract Clause violation may be brought under § 1983" is an open question in the Eighth Circuit. *Heights Apts., LLC v. Walz*, 30 F.4th 720, 728 (8th Cir. 2022). That question has split the Ninth Circuit, which holds that plaintiffs have a cause of action under § 1983, from the Fourth and Sixth Circuits, which hold that plaintiffs don't. *Compare S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 887 (9th Cir. 2003), *with Kaminski v. Coulter*, 865 F.3d 339, 347 (6th Cir. 2017), *and Crosby v. City of Gastonia*, 635 F.3d 634, 641 (4th Cir. 2011).

"[T]he only on-point Supreme Court decision suggests that the Contract Clause does *not* protect an individual constitutional right enforceable under § 1983 but is rather a structural limitation placed upon the power of the States."

*Kaminski*, 865 F.3d at 346 (citing *Carter v. Greenhow*, 114 U.S. 317, 321 (1885)). In *Carter*, the Supreme Court reasoned that the Contract Clause, "so far as it can be said to confer upon or secure to any person individual rights, does so only indirectly and incidentally." 114 U.S. at 322. Ultimately, the Court concluded that plaintiff may assert that indirect, incidental right when it initiates a "judicial proceeding ... to vindicate his rights under a contract." *Id.* Only then will the court "declar[e] the nullity of the attempt to impair [the contract's] obligation." *Id.* In other words, the Contract Clause, like the Supremacy Clause, "is simply a 'rule of decision'" for courts to follow. *Hayes v. Graves*, No. 4:21-cv-347-LPR, 2022 WL 822881, at *9 (E.D. Ark. Mar. 16, 2022) (quoting *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326 (2015)).

The Fourth and Sixth Circuits have thus held that § 1983 does not provide a private right of action for alleged violations of the Contract Clause. *See Kaminski*, 865 F.3d at 347; *Crosby*, 635 F.3d at 641. Only the Ninth Circuit—in a two-page per curiam—has gone the other way. *See S. Cal. Gas*, 336 F.3d at 887.[15] The Ninth Circuit relied on a footnote in the Commerce Clause case *Dennis v. Higgins*, 498 U.S. 439 (1992). There, the Supreme Court noted it had previously read *Carter* narrowly to involve only "a matter of pleading" that the plaintiff "had 'chosen

---

[15] In addition to the Eighth Circuit, the Third and Seventh Circuit have noted the circuit split but not ruled on the issue. *See Watters v. Bd. of Sch. Dirs.*, 975 F.3d 406, 413 n.2 (3d Cir. 2020); *Elliot v. Bd. of Sch. Trs.*, 876 F.3d 926, 931–32 (7th Cir. 2017).

not to resort'" to his right under the Contract Clause. *Id.* at 451 n.9 (quoting *Chapman v. Houston Welfare Rts. Org.*, 441 U.S. 600, 613 n.29 (1979)).

If the Court reaches this point, it should hold that there is no cause of action under § 1983 for alleged Contract Clause violations, adopting the reasoning from the Fourth Circuit in *Crosby* and the Sixth Circuit in *Kaminski*. Specifically, the Court should hold that the Supreme Court's decision in *Carter* is binding and that the Contract Clause confers at most an "indirect[] and incidental[]" individual right that acts as a rule of decision. *Carter*, 114 U.S. at 322.

**2. The Ordinance does not violate the Contract Clause.**

Assuming Avaio had a cause of action, it is unlikely to succeed on the Contract Clause analysis. To assess whether a law runs afoul of the Contract Clause, courts apply a two-part test. *See, e.g.*, *Ass'n of Equip. Mfrs. v. Burgum*, 932 F.3d 727, 730 (8th Cir. 2019). First, a court asks "whether the state law has 'operated as a substantial impairment of a contractual relationship.'" *Id.* "If the answer is yes," the court asks "whether the state law is drawn in an appropriate and reasonable way to advance a significant and legitimate public purpose." *Id.* (citation omitted).

The first part of the test "has three components: [1] whether there is a contractual relationship, [2] whether a change in law impairs that contractual relationship, and [3] whether the impairment is substantial." *Equip. Mfrs. Inst. v. Janklow*, 300 F.3d 842, 859 (8th Cir. 2002) (alterations in original) (citation

omitted). Analysis of the third component "is akin to a question of reasonable foreseeability: if the party to the contract who is complaining could have seen it coming, it cannot claim that its expectations were disappointed." *Burgum*, 932 F.3d at 730 (citations omitted).

Only if Avaio meets the first part does the analysis shift to the second part, which has two components. Under the first component, "[t]he State bears the burden of proof in showing a significant and legitimate public purpose underlying the Act." *Id.* This inquiry is more demanding than the legitimate-government-interest requirement under rational-basis review because the State's interest cannot merely be "conceivable or incidental," *Burgum*, 932 F.3d at 734, but must be the State's actual purpose for the legislation and be directly served by the law. And once the State demonstrates both that it has "a significant and legitimate public purpose" for the retroactive legislation and that the State "is not a contracting party," the analysis turns to the second component: "whether the law is drawn in an appropriate and reasonable way to advance that purpose." *Id.* at 730, 734 (citation omitted). "At this last step, the Supreme Court has directed courts to defer to the legislative judgment as to necessity and reasonableness" of the State's law as a means of serving its purpose. *Id.* at 734 (citing *Energy Rsrvs. Grp. v. Kan. Power & Light Co.*, 459 U.S. 400, 412–13 (1983)). At this point, the analysis is all but indistinguishable from how rational-basis review evaluates means-ends fit. *See id.* (noting that absent the more robust threshold requirement of a legitimate interest,

the test would "collaps[e]" into or "come perilously close to … rational basis"). Avaio fails to show likelihood of success at any step. Indeed, it doesn't even mention the Contract Clause's multifaceted test. *See* Doc. 9, at 30–31.

Turning to the Contract Clause analysis. Avaio must first "identify[] the precise contractual right that has been impaired." *Janklow*, 300 F.3d at 851 (quoting *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 504 (1987)). Here, Avaio has a problem. It claims that the Ordinance "disrupts [Avaio's] binding AES with Entergy," Doc. 9, at 30, but it hasn't even presented the allegedly impaired contract to the Court for analysis. In its failure to even attach the contract, it hasn't identified a "precise" obligation that is impaired within the contract. *Janklow*, 300 F.3d at 851 (quoting *Keystone*, 480 U.S. at 504). That makes it impossible to conduct the analysis because, without knowing what obligation is allegedly impaired, one cannot, for example, determine "whether the [unidentified] impairment is substantial." *Janklow*, 300 F.3d at 859 (citation omitted). But it is safe to assume there is no impairment, much less a substantial one, because the Ordinance doesn't apply to Avaio in the first place. *See supra* pp. 6–7.

Likewise, it is difficult to address the County's interest without knowing which part of the Ordinance allegedly impairs an unknown portion of Avaio's contract. As explained above, local governments have significant reason to regulate projects like Avaio's—from infrastructure concerns to noise pollution and wildlife preservation. *See supra* pp. 2–3. The Ordinance appropriately advances that

interest by allowing regulated projects to continue once the project confirms it will not harm the public health, safety, services, or welfare.

### G. The Ordinance does not violate the Takings Clause.

Avaio's final federal claim is a one-paragraph assertion that the Ordinance violates the Takings Clause because it uses the term "lawful access." Doc. 9, at 31. The provision Avaio references is under Article 12 of the Ordinance. *See* Ex. 1, at 26–28. Under that provision, the County is allowed "reasonable … inspection of areas, records, equipment, and conditions relevant to land use compliance … upon reasonable advance notice when practicable … in a matter minimizing unnecessary interference." *Id.* at 26. And even in an emergency, the County may only "require immediate *consensual* access," unless otherwise legally authorized to enter. *Id.* (emphasis added). In other words, this is a typical "government health and safety inspection regime" that does "not constitute takings." *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 161 (2021). That's because if "the grant of a benefit such as a permit" is conditioned on "reasonable" access, the constitutional analysis is "not … difficult to satisfy." *Id.*

Avaio does not engage in the constitutional analysis at all. *See* Doc. 9, at 31. The proper analysis supports the Ordinance's constitutionality. The access "bears an 'essential nexus' and 'rough proportionality' to the impact of the proposed use of the property." *Id.* For one, the access is tied directly to the "relevant … land use" for which a permit is granted. Ex. 1, at 26. And when inspecting that topic,

the County is only allowed "reasonable" access. *Id.* In short, the conditional access is "germane to [the] benefit provided to" the permit holder and to the "risk posed to the public." *Cedar Point*, 594 U.S. at 162.

**H. Avaio's state-law claims fail.**

The Court should dismiss Avaio's state-law claims and hold it is unlikely to succeed on them for two reasons: (1) the Court should decline to exercise its supplemental jurisdiction to review the state-law claims, and (2) the state-law claims fail on the merits.

**1. The Court should decline to exercise its supplemental jurisdiction over Avaio's state-law claims.**

District courts have supplemental jurisdiction over state-law "claims that are so related to claims in the action within [their] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). But if the district court "dismisses all the claims over which it has original jurisdiction, it is usually appropriate to decline supplemental jurisdiction." *Wanna v. RELX Grp., PLC*, 142 F.4th 1102, 1107 (8th Cir. 2025); *see also* 28 U.S.C. § 1367(c)(3). And if the state-law "claim raises a novel or complex issue of State law," the Court may also "decline to exercise supplemental jurisdiction." 28 U.S.C. § 1367(c)(1). The Court should decline to exercise supplemental jurisdiction over Avaio's state-law claims for two reasons.

First, as explained above, the Court lacks Article III jurisdiction over all of Avaio's claims, and Avaio's federal claims fail on the merits. *See supra* pp. 5–28.

Therefore, only state-law claims could be left, so it is appropriate to leave those to state courts. *See Wanna*, 142 F.4th at 1107; *Wilson v. Miller*, 821 F.3d 963, 971 (8th Cir. 2016) (explaining that "judicial economy, convenience, fairness, and comity" will usually "point toward declining to exercise" supplemental jurisdiction (citation omitted)).

Second, the FOIA claims raise a novel legal issue—what is an "immediate" appeal from the denial of a right secured by the FOIA? *See supra* pp. 10–11. There is no state-law precedent on that issue. Thus, "federal resolution of the case would deprive the state courts of a fair opportunity to develop state law on a significant issue." *Hunter v. Page County*, 102 F.4th 853, 870 (8th Cir. 2024).

In sum, the Court should decline to exercise supplemental jurisdiction over the state-law claims.

**2. Avaio's claim that the Ordinance infringes on the Public Service Commission's exclusive jurisdiction fails.**

If the Court decides to exercise supplemental jurisdiction, Avaio's state-law preemption claim fails. Arkansas counties "may exercise local legislative authority not denied by the Constitution or by law." Ark. Const. amend. 55, § 1(a). That authority "include[s], but [is] not limited to, the power to … [p]reserve peace and order and secure freedom from dangerous or noxious activities," Ark. Code Ann. § 14-14-801, and to provide various services, such as "[p]lanning" and "zoning," "[w]atercourse, drainage, irrigation, and flood control," "[e]mergency services," "[a]ir and water pollution control," and "[w]ater, sewer, and other utility

services," *id.* § 14-14-802(b)(2). In providing these services, the County can "exercise regulatory powers." *Id.* § 14-14-804. As relevant here, the County is only prohibited from "establish[ing] a rate or price otherwise determined by a state agency." *Id.* § 14-14-805(5). Avaio attempts to shoehorn its state-preemption argument into that narrow limitation by throwing a multitude of citations against the wall, hoping something sticks. Nothing does.

First, Avaio's assertion that the "General Assembly narrowly restricts local regulatory authority in this specific field" is confusing. Doc. 9, at 12. It does not explain what "specific field" it is referencing, and it cites Arkansas Code § 23-18-526 in support. *See id.* But that provision only deals with "major utility facilit[ies]." Ark. Code Ann. § 23-18-526. And a "major utility facility" is defined as certain "electric generating plant[s]" and "transmission line[s]" and as certain "gas transmission line[s]." *Id.* § 23-18-503(7). The Ordinance doesn't regulate major utility facilities, and even if it did, Avaio's project isn't one. It's a data center. *See* Doc. 1, ¶ 1.

Second, Avaio cites "[t]he *Centerpoint* cases." Doc. 9, at 12. Its citation to these cases is inapposite. There, plaintiffs brought state-law claims in trial court with allegations that were "[i]n essence … complain[ts] that they [were] being charged too much" and whose "damages [could] only be measured by comparing the rates they have been charged and the rates they should have been charged." 258 S.W.3d 336, 344–45 (Ark. 2007). So, because it was really a rate case, the

Public Service Commission's ("PSC") statutory " '[s]ole and exclusive jurisdiction' over rates" meant that the trial court could not exercise jurisdiction. *Id.* at 344 (quoting Ark. Code Ann. § 23-4-201(a)(1)). The other case Avaio cites, *General Telephone Co. of Southwest v. Lowe*, similarly holds that trial courts cannot exercise equity jurisdiction over "public utility litigation" when adequate remedy is available from the PSC. 569 S.W.2d 71, 73 (Ark. 1978). But the Ordinance does not set or alter rates, nor does it provide an avenue for public utility litigation. Indeed, it expressly notes that "[i]t does not regulate utility rates … within the exclusive authority of the Arkansas Public Service Commission." Ex. 1, at 31. Notably, Avaio does not point to any provision of the Ordinance that regulates rates or explain how the Ordinance allows some unidentified party to improperly engage in public utility litigation outside the PSC.

Third, Avaio cites Arkansas Code § 14-14-808(a) to note that counties cannot legislate inconsistently with state law or rule in "area[s] affirmatively subject by law to state regulation or control." While that is a correct statement of law, Avaio does not develop its argument in any meaningful way. It does not identify an area affirmatively subject to state control, though it is presumably utility rates considering the surrounding discussion. It does not explain how it thinks the Ordinance is inconsistent with state law. And it fails to mention that county legislation is only "inconsistent with state law … if it establishes standards or

requirements which are lower or less stringent than those imposed by state law." Ark. Code Ann. § 14-14-808(a).

Fourth, in one sentence, Avaio says that the Ordinance violated the proper process for planning and zoning. Doc. 9, at 13. It is unclear what relevance that has to the PSC's exclusive jurisdiction over ratemaking. In any event, the Ordinance is neither a zoning ordinance nor a county plan. *See* Ark. Code Ann. § 14-17-206 (county plan); *id.* § 14-17-209 (zoning). Avaio makes no effort to show otherwise.

Fifth, Avaio appeals to the legislative findings and intent to assert that the Ordinance's appeal process is preempted. Doc. 9, at 13. But the provision Avaio cites (like before) deals only with "major utility facilit[ies]." Ark. Code Ann. § 23-18-502(e)(1). As explained above, the Ordinance does not address major utility facilities. *See supra* pp. 30–31.

Sixth, Avaio asserts that the Ordinance directly regulates the PSC because it meets the Ordinance's definition of "Affected Public-Service Entity." Doc. 9, at 14. Initially, Avaio doesn't explain why it thinks the PSC falls into the definition, and it is hard to see why the PSC would. Entities that fall within the definition include "fire department[s]," "road authorit[ies]," "school district[s]," or "other governmental or public service entit[ies] whose *facilities or services* may be *materially* affected." Ex. 1, at 3 (emphasis added). The PSC is unlike any of the other listed entities, so the catch-all term should not be read so broadly as to include

the PSC. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 195 (2012) ("When … any words … are associated in a context suggesting that the words have something in common, they should be assigned a permissible meaning that makes them similar."); *Forrester v. Daniels*, 373 S.W.3d 871, 876 (Ark. 2010) (explaining that under "the doctrine of noscitur a sociis" a word is known by those that accompany it). Additionally, it's unclear what PSC "facilities or services" would be affected, much less "materially affected." Ex. 1, at 3. Avaio has failed to even try to meet its burden on this point, so it should be dismissed out of hand. Further, even if the PSC were referenced in the Ordinance, it is unclear why that matters. The provisions Avaio cites as problematic do not subject Affected Public-Service Entities to regulation; they merely allow the Affected Public-Service Entity to take part in the process if it wishes. *E.g.*, Ex. 1, at 8, 12 (allowing Affected Public-Service Entities to "review" applications, providing "notice" to Affected Public-Service Entities, and allowing Affected Public-Service Entities to "appeal" an application decision).

Seventh, Avaio's penultimate paragraph begins with a non sequitur—that the Arkansas Court of Appeals has jurisdiction over PSC appeals. Doc. 9, at 14. No one disputes that. The Ordinance does not purport to allow the County to hear appeals from the PSC, and Avaio hasn't tried to identify any provision of the Ordinance that could arguably allow such a thing. Avaio then ends where things started, asserting that the Ordinance improperly allows the County to do all sorts

of things related to electricity utilities. Doc. 9, at 15. But Avaio fails to confront the fact that counties have all legislative authority within their boundaries, except what has been taken away. *See supra* p. 30. The relevant portion taken away here is ratemaking. Ark. Code Ann. § 14-14-805(5). And the Ordinance does not set or alter rates.

The Ordinance was therefore a proper exercise of the County's authority, and it is not preempted by the PSC's exclusive authority over ratemaking.

#### 3. Avaio's FOIA claims fail.

If the Court decides to exercise supplemental jurisdiction, Avaio's FOIA claims against the County and Judge Hyde fail. As explained above, Avaio lacks Article III standing and does not allege that Judge Hyde committed any FOIA violation. *See supra* pp. 9–11. And its claims against Pulaski County rise or fall with the individual defendants' liability. *See supra* pp. 8–10. Avaio's FOIA claims are therefore unlikely to succeed.

## III. Avaio has not clearly shown that the remaining preliminary-injunction factors weigh in its favor.

Not only is Avaio unlikely to succeed on the merits, it has failed to make a "clear showing" that the remaining preliminary-injunction factors merited "extraordinary" preliminary relief. *Winter*, 555 U.S. at 22, 24.

### A. Avaio has not established irreparable harm.

"[T]he failure of a movant to show irreparable harm is an 'independently sufficient basis upon which to deny a preliminary injunction.'" *Hotchkiss v. Cedar*

*Rapids Cmty. Sch. Dist.*, 115 F.4th 889, 893 (8th Cir. 2024) (citation omitted). A party is irreparably harmed when it "has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Grasso Enters., LLC v. Express Scripts, Inc.*, 809 F.3d 1033, 1040 (8th Cir. 2016) (citation omitted). Initially, because Avaio's arguments fail on the merits, it cannot "show[] a threat of irreparable harm that warrants preliminary injunctive relief." *Powell v. Noble*, 798 F.3d 690, 702 (8th Cir. 2015).

Even if Avaio were right on the merits, its two bases for irreparable harm are insufficient. First, Avaio quotes "[p]roponents of the Ordinance" as saying it will apply to Avaio. Doc. 9, at 32. And because the Ordinance allegedly applies to it, Avaio asserts that the Ordinance's "costly, duplicative, and conflicting requirements" cause irreparable harm. Doc. 9, at 33. But as explained, the text of the Ordinance is clear that Avaio is grandfathered in and does not need a Conditional Use Permit under the Ordinance, unless it materially deviates from what has already been approved. *See supra* p. 3.

Second, Avaio provides quotes that are purportedly from a declaration attached to their motion. *See* Doc. 9, at 33. But it does not appear that the quoted language is in the declaration. *See* Doc. 8, Ex. 1. The closest the declaration gets to the misquoted language is when it twice claims that it may suffer a "loss of goodwill" based on the project being delayed and unidentified "disruption of and interference with" Avaio's "business relationships." Doc. 8-1, ¶¶ 18, 25. But

when "declarations are conclusory, stating [a plaintiff] has lost client goodwill and the resulting harm is incalculable, but not explaining why the loss defies calculation," it is insufficient to establish irreparable harm. *Choreo, LLC v. Lors*, 164 F.4th 667, 672 (8th Cir. 2026). That is the problem with Avaio's declaration: it includes two conclusory paragraphs claiming that goodwill will be lost, but it provides no explanation or evidence to support that assertion. The declaration therefore cannot meet Avaio's burden to establish irreparable harm.

**B. The balance of the harms and the public interest weigh in Defendants' favor.**

Because " 'the Government'—or, in this case, a [county] official in his official capacity [and the County]"—are opposing the preliminary injunction, "[t]he balance-of-the-harms and public-interest factors 'merge.' " *Eggers v. Evnen*, 48 F.4th 561, 564 (8th Cir. 2022) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)).[16] As explained throughout, the potential harm from data centers is real, and the County appropriately exercised its authority to protect the public from those harms. *See supra* pp. 2–3 (identifying the harms the Ordinance sought to address). Avaio's interests, on the other hand, will be unaffected. First, the Ordinance doesn't apply to it. *See supra* pp. 6–7. Second, even if it did apply, Avaio has not shown that it is likely to succeed on any of the merits.

[16] There does not appear to be an Eighth Circuit case that explicitly holds these two factors merge when a county official opposes a preliminary injunction. But there does not appear to be any reason to treat local officials differently than other governmental officials.

Further, Avaio's claims about the public interest are also misplaced. The only public interest it identifies is the FOIA's public policy statement. *See* Doc. 9, at 34–35. While that may be sufficient for its FOIA claims, it is unrelated to every other challenge it has raised. Because Avaio must make a "clear showing," *Winter*, 555 U.S. at 22 (citation omitted), that it is entitled to preliminary relief for "each claim," *Laroe Estates*, 581 U.S. at 440, it cannot parlay public-interest in its FOIA claim into every other non-FOIA claim.

**IV. If the Court enters a preliminary injunction, it must be narrowly tailored to the harm Avaio has actually shown.**

Avaio's request for a preliminary injunction should be denied for all the reasons discussed above. But if the Court grants Avaio's request, the "preliminary injunction must be narrowly tailored to remedy only the specific harms shown by the plaintiff[], rather than to enjoin all possible breaches of the law." *St. Louis Effort for AIDS v. Huff*, 782 F.3d 1016, 1022–23 (8th Cir. 2015) (affirming preliminary injunction only as to the statutory section and subsections that were "likely preempted"). The Eighth Circuit's focus on narrow preliminary injunctions "is consistent with the Supreme Court's recent emphasis on narrow injunctions that disturb the actions of the democratically accountable branches of government only where those actions are or would be unlawful." *Roth v. Jones*, 795 F. Supp. 3d 1090, 1119 (E.D. Ark. 2025) (citing *Trump v. CASA, Inc.*, 606 U.S. 831 (2025)).

Here, Avaio requests that the Court preliminary enjoin Defendants from enforcing *any* provision of the Ordinance against Avaio "and its privies." Doc. 8, at 2. But Avaio hasn't challenged the bulk of the 36-page Ordinance. For example, Avaio doesn't dispute that the Ordinance properly requires applicants to address "water and wastewater plan[s]," noise pollution, traffic impact, and a "construction-management plan." Ex. 1, at 7–8; *see also id.* at 9–10 (allowing approval only on showings related to "[w]ater and wastewater" and "[e]nvironmental protection," among other requirements). Avaio has not and cannot show that every provision of the Ordinance should be preliminary enjoined, particularly in light of the Ordinance's severability clause. *See* Ex. 1, at 35.

If the Court grants a preliminary injunction, it must be narrowly tailored to Avaio's alleged harms.

## Conclusion

For these reasons, the Court should grant Pulaski County and Judge Hyde's motion to dismiss and deny Avaio's motion for preliminary injunction.

Respectfully submitted,

Noah P. Watson
Ark. Bar No. 2020251

Watson & Watson LLP
P.O. Box 707
Searcy, Arkansas 72145
(501) 388-4514
noah@watsonlawllp.com

*Counsel for Pulaski County and County Judge Barry Hyde*