**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**ADP LITTLE ROCK DATA HUB, LLC** **PLAINTIFF**

vs. **Case No. 4:26-cv-01196-LPR**

**PULASKI COUNTY, ARKANSAS;**
**BARRY HYDE, in his official capacity**
**as Pulaski County Judge;**
**JULIE BLACKWOOD, in her official capacity**
**as Pulaski County Justice of the Peace** **DEFENDANTS**

# BRIEF OF AMICUS CURIAE WENDELL GRIFFEN CONCERNING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Table of Contents

Interest of Amicus and Introduction ........ 3
I. The preliminary injunction inquiry requires evidence and precise relief ........ 4
II. The shared Final County Approval analysis misreads Article 17 ........ 5
III. Article 17 status determinations require proof of approval scope ........ 6
IV. Exemption eligibility and vested rights are separate questions ........ 7
V. Counsel assertions do not eliminate the County interest in administration ........ 8
VI. FERC expressly preserves authority over siting and construction ........ 9
VII. Wholesale participation does not establish a land use exemption ........ 10
VIII. Arkansas utility jurisdiction must be distinguished from site regulation ........ 11
IX. The commerce and equal protection claims require more than identification of ADP ........ 13
X. The FOIA analysis must apply the current statutory distinctions ........ 14
XI. Records disputes and missing information require tailored findings ........ 15
XII. Procedural uncertainty does not establish standardless authority ........ 16
XIII. Contract and inspection claims require their respective substantive tests ........ 17
XIV. Irreparable harm and the public interest must be established concretely ........ 18
XV. Any relief should preserve lawful review and unchallenged protections ........ 19
Certificate of Service ........ 20

**Interest of Amicus and Introduction**

Wendell Griffen, Pulaski County Judge-elect, submits this brief by leave of Court concerning ADP Little Rock Data Hub, LLC's motion for preliminary injunction. He will assume office on January 1, 2027. His interest is the lawful administration of Ordinance 26-OR-19 ("the Ordinance") and the lawful exercise of the statutory and constitutional responsibilities of the office he is about to enter. He does not presently direct County personnel or control the County's defense. This submission seeks no reconsideration of the denial of intervention.

The Court should deny ADP's requested blanket injunction. Neither an unsupported exemption nor an unrestricted application of the Ordinance follows from the present dispute. Article 17 protects qualifying development within the demonstrated scope of final County approvals, preserves independently established vested rights, and subjects qualifying post-effective-date material modifications to review. Dkt. 21-1 at 32–35. Those protections must be read together.

The County and ADP share a mistaken interpretation of the Ordinance's Final County Approval provisions. An approval designated as final does not establish a project-wide exemption or constitutional vested rights. Section 17.2 of the Ordinance limits the exemption to development actually authorized by the approved plans, while Section 17.6 requires a determination of the existence and scope of those approvals based on competent evidence. Dkt. 21-1 at 32–34. ADP adopts the County's exemption position while invoking the incoming administration to justify an injunction supposedly causing no County harm. Neither party's position substitutes for the determination required by the Ordinance or justifies exempting development beyond the scope of existing approvals.

Amicus supports the County's defense of its lawful land-use authority but does not adopt every argument advanced in its response. The Court should distinguish regulation of utility transmission and rates from lawful land-use review, exemption eligibility under Article 17 from independently established vested rights, and remedies for alleged FOIA violations from invalidation of the Ordinance. ADP has not established entitlement to a blanket injunction. Any

preliminary relief should be narrowly tailored to demonstrated injuries and should not exempt development beyond the scope of existing County approvals.

**I. The preliminary injunction inquiry requires evidence and precise relief**

A preliminary injunction is an extraordinary remedy requiring an adequate showing of likely irreparable injury, success on the merits under the applicable standard, favorable equities, and the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20–24 (2008); *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 113–14 (8th Cir. 1981) (en banc). A justiciable dispute does not itself establish entitlement to immediate relief.

The Court should determine the applicable likelihood-of-success standard under *D.M. v. Minnesota State High School League*, 917 F.3d 994, 999–1001 (8th Cir. 2019). Unlike duly enacted state statutes, local ordinances are not automatically entitled to the heightened likely-to-prevail standard. The Court must examine the circumstances of enactment to determine whether the challenged action reflects the full play of the democratic process. The County's public legislative proceedings differ from the school-league rulemaking in *D.M.* Similar to a statute, an ordinance is presumed to be constitutional, and the burden of proving otherwise is on the challenging party. *Benton County Stone Co. v. Planning Bd.*, 288 S.W.3d 653, 374 Ark. 519 (2008) (discussing a county land-use ordinance); *Craft v. City of Fort Smith*, 335 Ark. 417, 984 S.W.2d 22 (1998); *Laudan v. State*, 322 Ark. 58, 907 S.W.2d 131 (1995); *Board of Adjustment of Fayetteville v. Osage Oil & Transp., Inc.*, 258 Ark. 91, 522 S.W.2d 836 (1975). ADP's allegations of improper private polling and deliberation are relevant to that inquiry, but allegations alone do not establish the nature or extent of any violation. Dkt. 28 at 2–3, 21–27.

The Court should examine the public legislative record and the communications established by the evidence, including their participants, subjects, and timing. Amicus does not contend that public voting cures prohibited private deliberation. Nor does every alleged FOIA violation necessarily establish that the entire legislative process lacked democratic consideration or that invalidation of the Ordinance is warranted. Even if the fair-chance standard applies, ADP must independently establish the remaining requirements for preliminary relief.

Finally, the Court should distinguish allegations accepted assumed true for purposes of a motion to dismiss from evidence sufficient to support a preliminary injunction. ADP promises additional testimony and confidential agreements. Dkt. 28 at 35–37. The Court may evaluate that evidence when presented and determine whether any threatened injury is attributable to enforcement of particular provisions of the Ordinance. Any relief should rest on specific findings, be narrowly tailored to demonstrated harm, and preserve a meaningful opportunity to address material newly presented evidence.

**II. The shared Final County Approval analysis misreads Article 17**

Section 17.2 of the Ordinance excuses a qualifying project from obtaining a new Conditional Use Permit solely because the Ordinance was adopted. Qualification requires all Final County Approvals required under then-applicable County law to authorize the specific development. The Ordinance defines Final County Approval by reference to required discretionary County land-use authorizations, following expiration or resolution of administrative appeals. It excludes preliminary, ministerial, utility, and approvals subject to unresolved material discretionary conditions. Dkt. 21-1 at 4, 32.

The County’s characterization of ADP's approval as Final Site Plan Approval does not, by itself, establish the existence or scope of all required Final County Approvals. Section 17.2 of the Ordinance limits the exemption to the specific use, location, scale, capacity, structures, facilities, phases, and development authorized by the approved plans. It preserves existing approval conditions and otherwise applicable laws and does not confer an automatic right to expansion, additional phases, or other development beyond those approvals. Id. at 32.

As discussed below, Section 17.6 of the Ordinance establishes a procedure for determining whether a project qualifies for an exemption and the scope of any exemption established. It places the burden of proof on the claimant and requires a written determination supported by competent evidence. Dkt. 21-1 at 34. ADP has not sought a determination under Section 17.6, and no determination under that provision has been made. Neither the County's litigation position nor ADP's assertion of final approval substitutes for that inquiry.

Sections 17.1, 17.2(d), and 17.4 of the Ordinance expressly preserve Article 8 review of qualifying post-effective-date Material Modifications, to the extent permitted by law. Completion, operation, maintenance, repair, or replacement within an existing approval is not a Material Modification merely because it occurs after the effective date. Changes materially increasing or altering the approved scale, capacity, intensity, operation purpose, or development impacts present a different question. Id. at 32–33.

Consequently, the County must honor an exemption ADP establishes under Article 17. The absence of a ministerial permit alone would not defeat an exemption defined by discretionary land-use authorizations. But ADP must identify what those authorizations cover. The necessary inquiry is neither whether every future activity requires a new CUP nor whether an approval letter immunizes the entire enterprise. It is whether the particular development falls within the scope of established approvals or remains subject to lawful prospective review.

**III. Article 17 status determinations require proof of approval scope**

Section 17.6 of the Ordinance assigns the claimant the burden of establishing an exemption by competent evidence and requires a written determination identifying the existence, scope, and conditions of qualifying Final County Approvals. Dkt. 21-1 at 34. ADP has not sought that determination. Neither ADP's assertion of final approval nor the County's agreement establishes an exemption under the procedure the Ordinance prescribes.

The parties' shared position collapses three distinct questions: whether all required approvals were obtained, what development those approvals authorized, and whether proposed activity exceeds their scope. The County relies on the designation Final Site Plan Approval without identifying a Section 17.6 determination. Dkt. 21 at 4–6, 9. ADP invokes Section 17.6 principally as a potential source of delay. Dkt. 28 at 16–17 n.7, 34–35. Agreement between litigants cannot amend the Ordinance or supply the evidence and finding necessary to establish the claimed exemption.

The August 11, 2026 correspondence, attached as Exhibit 2 to the Complaint, states that five conditions associated with the December 19, 2024 conditional site-plan approval had been

satisfied. Dkt. 1 at 40. The underlying conditional approval, approved plans, and documentation establishing satisfaction of those conditions have not been presented to the Court. Without those materials, the Court cannot independently evaluate the nature of the conditions, the basis for their satisfaction, or the precise scope of the development authorized. Amicus does not contend that the absence of these documents establishes the invalidity of the approval. Rather, the present record does not support treating the parties' agreement concerning final approval as conclusive proof that every contemplated use, structure, facility, or phase qualifies for exemption under Article 17.

Amicus does not argue that exhaustion of Section 17.6 is an absolute prerequisite to federal constitutional review or that the Court cannot protect constitutional rights before enforcement. The narrower point is that a blanket, project-wide exemption cannot rest on an approval label or the parties' agreement. The Court should not erase the ordinance-prescribed inquiry or assume that every contemplated phase was approved. If evidence establishes protection for specified development, any relief should identify that development and preserve lawful review of activities beyond the demonstrated scope of existing approvals.

**IV. Exemption eligibility and vested rights are separate questions**

Final County Approval does not itself establish vested development rights. Article 17 distinguishes its approval-based exemption from independently established vested rights under Arkansas law. Section 17.6 of the Ordinance assigns the Planning Director responsibility for determining exemption eligibility and scope, expressly excluding adjudication of constitutional claims or vested rights. Section 17.7 preserves independently established rights without enlarging the scope of existing approvals or entitling future development. Dkt. 21-1 at 34–35. Neither party may treat an approval letter as dispositive of both inquiries.

Arkansas's substantial-use cases caution against categorical conclusions. In *Blundell v. City of West Helena*, 258 Ark. 123, 131–34, 522 S.W.2d 661 (1975), the Arkansas Supreme Court applied the substantial-use test to determine the extent of a protected nonconforming use. The Court recognized vested rights in the sufficiently developed portion of a mobile-home park

without extending protection to all additional spaces contemplated for future development. Its analysis considered substantial implementation and the owner's burden of proof; actual occupancy was not invariably necessary. The relevant development, rather than the project's commercial label alone, defined the inquiry.

In *Potter v. City of Tontitown*, 371 Ark. 200, 264 S.W.3d 473 (2007), the Court reaffirmed that vested rights require good faith and substantial use. Despite substantial claimed expenditures, the developers failed to establish either requirement. Their knowledge that approval was conditional defeated good faith, and the work performed did not constitute substantial use. These decisions do not establish that ADP lacks vested rights. They demonstrate why the nature, timing, and extent of authorized development, actual construction, expenditures, and knowledge of applicable restrictions must be examined before determining whether rights have vested and how far they extend.

The Court need not decide ultimate vesting to reject an unsupported project-wide exemption. Nor does investment alone establish a right to undertake additional development after the Ordinance's effective date. If ADP proves vested rights, those rights must be respected. If the Court addresses only exemption eligibility under Article 17, its determination should identify the protected development without foreclosing lawful review of unapproved uses or Material Modifications.

**V. Counsel assertions do not eliminate the County interest in administration**

ADP argues that an injunction costs the County nothing because County counsel says the Ordinance does not apply. Dkt. 28 at 37. That conclusion depends on the disputed scope of ADP's claimed exemption. An injunction preventing the County from determining approval status or reviewing future Material Modifications would restrain responsibilities expressly preserved by Article 17. The balance of equities cannot disregard those responsibilities before the scope of existing approvals and proposed development has been established.

ADP also repeatedly characterizes Judge Hyde's veto and the County's litigation positions as binding admissions. Id. at 2, 14, 27–29, 34–35. Factual representations concerning

staffing, approval history, and remaining requirements must be evaluated in context. But legal conclusions about the Ordinance's validity or applicability do not displace the Court's responsibility to interpret its text. Judge Hyde's veto expressed objections to the Ordinance; the Quorum Court subsequently overrode it. Dkt. 21-1 at 36.

The County also argues that the County Judge lacks the enforcement authority necessary to establish traceability and redressability, and extends that argument to the County itself. Dkt. 21 at 10–12. Amicus does not contend that general executive authority alone establishes standing against the County Judge. But the Court should distinguish the enforcement connection required for ADP's particular claims from the County Judge's broader constitutional and statutory responsibilities. Ark. Const. amend. 55, § 3; Ark. Code Ann. § 14-14-1102. A determination that the County Judge is not a proper defendant for particular prospective relief need not resolve or diminish the lawful administrative responsibilities of that office.

Amicus seeks to preserve lawful implementation, not to prejudge ADP's exemption or vested rights. His position that the scope of existing approvals remains unresolved is not a stop-work order, an administrative determination, or a commitment to unlawful enforcement. ADP's reliance on that position does not establish an entitlement to an injunction prohibiting every lawful application of the Ordinance.

**VI. FERC expressly preserves authority over siting and construction**

ADP relies on the Federal Energy Regulatory Commission’s (FERC) large-load proceeding to characterize local review as an obstacle to federally preferred interconnection. Dkt. 28 at 4–7. The relevant order, however, distinguishes jurisdictional transmission-service studies from the underlying development. The order expressly recognizes that resolving large-load issues requires the involvement of federal, state, and local entities. *Midcontinent Independent System Operator, Inc.*, 195 FERC ¶ 61,212, ¶ 42 (June 18, 2026), Docket No. EL26-70-000. Paragraph 46 further recognizes continuing state regulation of “any siting decisions and construction associated with the large load project.” The order thus distinguishes federal

authority over transmission-service processes from the governmental authority governing the underlying development.

That reservation is inconsistent with treating every local requirement affecting a large load's construction schedule as preempted. Paragraphs 44–47 describe federal authority over transmission-service processes while reserving other authority. The order neither approves ADP's particular development nor determines the permissible scope of local land-use review. Federal policy favoring timely interconnection must be understood within those jurisdictional boundaries.

The reservation to states does not independently grant power to Pulaski County. The County must act under Arkansas law and may not impose requirements that conflict with federal law. But the interstate character of electricity transmission does not, by itself, preempt otherwise lawful local land-use regulation. The analysis must identify the particular County requirement and explain how it conflicts with federal authority.

*Hughes v. Talen Energy Marketing*, *LLC*, 578 U.S. 150, 163–66 (2016), distinguishes permissible regulation within retained authority from interference with FERC's wholesale-rate determinations. The Ordinance's treatment of batteries, cooling equipment, generators, emergency access, drainage, and development intensity should be evaluated by what the provisions actually regulate. Article 16 and Section 10.4 of the Ordinance expressly disclaim utility-rate, tariff, service-contract, and exclusively regulated matters. Dkt. 21-1 at 15, 31. Those limitations must inform construction and administration, not be disregarded or treated as a defense to an actual proven conflict.

**VII. Wholesale participation does not establish a land use exemption**

ADP says its Agreement for Electric Service includes participation in wholesale demand-response programs and resale of electricity coordinated with Entergy. Dkt. 28 at 5–6. The Court should evaluate the operative agreement and applicable market provisions rather than accept the County's categorical description of ADP as exclusively a retail customer. Whether ADP

participates in wholesale electricity markets does not resolve whether the Ordinance unlawfully regulates those markets.

Even assuming the asserted wholesale participation, ADP must identify which County requirement regulates a wholesale transaction, changes a federally approved rate, conflicts with an applicable tariff obligation, or otherwise intrudes into an exclusively federal field. A land-use requirement addressing the physical impacts of generators or battery systems does not necessarily regulate their compensation in wholesale markets. Conversely, the County cannot regulate wholesale-market participation or override federal transmission-service obligations under the guise of land-use review.

ADP’s Exhibit 14 also requires attention to procedural status. The November 16 MISO transmittal describes proposed tariff revisions and requests acceptance effective February 14, 2027. Dkt. 28-2 at 1–3. A tariff filing does not, merely by its submission, establish that the proposed revisions are effective or govern ADP's rights. The Court should distinguish existing tariff obligations from proposed revisions and determine whether any operative provision conflicts with a particular County requirement.

Federal transmission regulation and lawful local land-use review are not mutually exclusive. ADP's participation in wholesale markets does not, by itself, exempt the physical development of its facilities from otherwise lawful land-use requirements. Any actual conflict should be evaluated by reference to the particular provision and its application, with preliminary relief confined to the interference established.

**VIII. Arkansas utility jurisdiction must be distinguished from site regulation**

ADP correctly observes that Pulaski County is not the State and possesses only authority available under Arkansas law. Dkt. 28 at 7, 16–19. The Ordinance invokes Amendment 55 and Arkansas Code Title 14, Chapter 17, as well as §§ 14-14-801 and 14-14-802. Dkt. 21-1 at 1. Arkansas Code Ann. §14-14-804 addresses county regulatory powers in connection with authorized services. These sources, their limitations, and the nature of each challenged requirement must be examined together.

The County cannot set utility rates, determine wholesale-market participation, or supersede functions committed exclusively to the Arkansas Public Service Commission. The relevant inquiry is whether a challenged provision regulates land use and the physical impacts of development within the County's statutory authority, or instead regulates a matter reserved to another governmental body. Requiring evidence that electrical service is available is not necessarily equivalent to prescribing the terms or rates of that service.

Pulaski County's existing Subdivision and Development Code, adopted by Ordinance 09-OR-28, as amended, already requires applicants for nonresidential site-plan approval to submit letters or certificates of approval or disapproval from applicable utility companies. Pulaski County Subdivision and Development Code § 6.3(W), at 45 (Sept. 29, 2022 version). This requirement illustrates the distinction between requiring documentation of utility review as part of land-development approval and exercising regulatory authority over utility service. The County's receipt and consideration of that documentation does not itself constitute regulation of utility rates, tariffs, or service terms.

ADP’s invocation of Ark. Code Ann. § 14-14-808 therefore calls for an identified inconsistency. A formula equating greater stringency with validity would be inadequate in an exclusively regulated field. Equally inadequate is the converse assumption that everything mentioning electricity occupies that field. Arkansas Code Ann. §23-18-526 and other provisions concerning major utility facilities require attention to the actual facility and authorization involved; neither blanket local authority nor blanket immunity follows from the data-center label.

The Ordinance’s administrative appeals concern County decisions, not review of PSC orders. Any application that purports to reconsider a matter committed exclusively to the PSC must yield to controlling law. But the existence of a County review procedure does not establish that every land-use determination displaces PSC jurisdiction. The Ordinance's validity must be assessed according to the authority supporting its particular requirements and their actual

operation, rather than the County's categorical assertion that it is neither zoning nor a county plan. Dkt. 21 at 35.

### IX. The commerce and equal protection claims require more than identification of ADP

ADP's Commerce Clause argument treats effects on grid connection as proof of unlawful extraterritorial regulation. Dkt. 28 at 11–16. *National Pork Producers Council v. Ross*, 598 U.S. 356, 371–76 (2023), rejects a sweeping rule against laws merely because their effects cross state lines. The relevant inquiry distinguishes actual discrimination or excessive interstate burdens from ordinary consequences of regulating physical facilities located within the jurisdiction.

*North Dakota v. Heydinger*, 825 F.3d 912 (8th Cir. 2016), involved restrictions on electricity imports and power-purchase agreements. Its separate opinions require care: Judges Murphy and Colloton did not join Judge Loken's extraterritoriality rationale. The Court should examine ADP's analogy in light of the conduct regulated by this Ordinance and the Supreme Court's subsequent decision in *National Pork Producers*, rather than equate every development-related delay with regulation of out-of-state electricity transactions.

Under *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970), asserted burdens must be evaluated against local benefits. The Ordinance's findings identify infrastructure, safety, environmental, and neighboring-property concerns. Dkt. 21-1 at 1–3. ADP's preferred alternative does not establish that informational review alone supplies equivalent protection. Dkt. 28 at 14–16. The comparison must account for the Ordinance's enforceable requirements, the interests they serve, and the burdens they actually impose.

ADP's class-of-one equal protection claim presents a separate inquiry. It must establish intentional differential treatment from similarly situated entities without a rational basis. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564–65 (2000). The fact that ADP's proposed development prompted legislative consideration does not alone establish unconstitutional discrimination. Relevant distinctions may include development scale, principal use, operations, infrastructure demands, and physical impacts. Statements opposing "special treatment" must be

considered in their full context rather than presumed to establish an absence of rational justification. Dkt. 28 at 20–21. The Ordinance does not classify businesses according to state of origin.

**X. The FOIA analysis must apply the current statutory distinctions**

ADP's FOIA allegations merit examination under the governing statute, including its 2025 amendments. Arkansas Code Ann. §25-19-106(f) prohibits specified polling and deliberative communications while preserving background and nondecisional information. Arkansas Code Ann. §§ 25-19-103 and -106 must be read together. Amicus does not contend that communications involving fewer than a quorum are categorically exempt, that an intermediary may obtain private governmental decisions, or that a citizen's involvement automatically immunizes officials' conduct.

The actual content matters. ADP's Exhibit 13 expressly cautions that its call-and-text summary establishes contact rather than content. Dkt. 28-1 at 1. Timing, frequency, and recipients may support inferences, but they do not establish what every communication conveyed. Complete exchanges, reliable testimony, and a connection to the particular legislative action are necessary to evaluate the inference ADP urges. Its quoted messages must also be addressed, not dismissed simply because call metadata is incomplete.

*Harris v. City of Fort Smith*, 359 Ark. 355, 197 S.W.3d 461 (2004), rejected use of an administrator to obtain a governmental decision outside a public meeting. *McCutchen v. City of Fort Smith*, 2012 Ark. 452, 425 S.W.3d 671, distinguished distribution of information and proposed legislation without solicitation of a decision. Those pre-amendment decisions illuminate the distinction; current statutory text controls the conduct alleged here.

The required public deliberation is the governing body's meaningful deliberation, if any; the statute does not require every member to deliver a separate explanation of a vote. Ark. Code Ann. § 25-19-106(a)(5). Nevertheless, public voting alone does not cure proven private deliberation. ADP must establish the prohibited conduct and its legal consequences, rather than infer either validity or invalidity from the length of debate at one meeting.

**XI. Records disputes and missing information require tailored findings**

Records-production disputes, prohibited deliberation, and invalidation of legislative action present distinct questions. Arkansas Code Ann. § 25-19-106(i) authorizes a circuit court to invalidate governmental action in specified circumstances, including action resulting directly or indirectly from communications prohibited by subsection (f) or informal meetings prohibited by subsection (g). The remedy is discretionary, but the statutory reach is not limited to actions resulting directly from a violation. The Court must therefore determine whether a prohibited communication occurred, whether the challenged Ordinance resulted directly or indirectly from it, and whether invalidation is warranted. Neither incomplete records production nor evidence of contact, standing alone, resolves those questions.

Rule 37(e) also requires particular findings. Before applying that rule, the Court must determine whether information that should have been preserved was lost through failure to take reasonable steps and cannot be restored or replaced. An adverse presumption under subdivision (e)(2) requires intent to deprive another party of use of the information. Knowledge of anticipated litigation alone does not establish that intent. ADP’s allegations warrant inquiry, not automatic acceptance of the missing communications’ contents. Dkt. 28 at 24–25.

ADP's reliance on Ark. Code Ann. § 14-14-918(c) does not establish a general duty requiring individual justices of the peace to retain all communications concerning proposed ordinances. Dkt. 9 at 18. Arkansas Code Ann. § 14-14-918 addresses initiative and referendum measures and directs the county clerk to preserve specified evidence of procedural steps for three years. Even assuming subsection (c) extends to ordinances adopted directly by the Quorum Court, its language does not impose a blanket retention requirement on individual members' emails or text messages. Any separate duty arising from reasonably anticipated litigation must be evaluated under the requirements of Federal Rule of Civil Procedure 37(e), rather than presumed from the County's legislative recordkeeping statutes.

Any records order should identify the responsible custodians, required production, applicable exemptions, and appropriate procedures. Griffen was not a County official responsible

for answering the October request. His advocacy does not establish possession or administrative control of every County record. Conversely, the presence of an official communication on a personal device does not, by itself, remove it from applicable public-records duties.

The Court may also consider whether recently amended and disputed state-law issues warrant declining supplemental jurisdiction under 28 U.S.C. § 1367(c)(1), without assuming federal courts cannot hear FOIA claims. If the Court retains them, it should decide them under the same statutory distinctions. Amicus does not rely on the County's suggested near-instantaneous deadline for a FOIA appeal. The response chronology and agreed extensions should be determined from the underlying correspondence, not competing characterizations. Dkt. 28 at 25–27.

**XII. Procedural uncertainty does not establish standardless authority**

ADP challenges terms such as required electrical infrastructure, competent evidence, and material change, and fears indeterminate appellate delays. Dkt. 28 at 27–29, 34. Those concerns require examination of context and actual application. Due process demands fair notice and safeguards against arbitrary enforcement, not mathematical definitions for every technical judgment. *Grayned v. City of Rockford*, 408 U.S. 104, 108–10 (1972). In *Benton County Stone Co. v. Benton County Planning Board*, 374 Ark. 519, 288 S.W.3d 653 (2008), the Arkansas Supreme Court upheld a county land-use ordinance employing a compatibility standard, recognizing that a standard requiring administrative judgment is not necessarily unconstitutionally vague. The question is whether the Ordinance supplies sufficiently ascertainable standards to guide decision-making and guard against arbitrary enforcement.

Article 7 states approval criteria and requires written findings supported by substantial evidence. Articles 6 and 9 establish notice, hearings, a record, administrative decisions, and judicial review. Sections 8.2 and 17.4 of the Ordinance identify changes measured against an approved baseline. Dkt. 21-1 at 7–14, 33. Section 17.6 of the Ordinance requires a status determination within thirty calendar days after receipt of reasonably required information,

subject to a stated extension for extraordinary complexity. Id. at 34. These provisions bear directly on ADP's claim of unbounded discretion.

The stay provisions require precision. Sections 8.3, 9.5, and 17.6 of the Ordinance distinguish disputed or dependent activity from independently authorized work. Dkt. 21-1 at 12–14, 34. The County must respect that distinction and cannot arbitrarily expand a stay. ADP should identify the activity actually threatened, the approval supporting it, the disputed dependency, and the resulting delay. A proven unconstitutional application may justify focused relief; it does not automatically justify suspending every standard.

Nor is a determination of preexisting approval scope necessarily retroactive regulation. Article 17 protects specified qualifying development while preserving prospective review of new or materially changed development and independently established vested rights. The Court should distinguish the time of an investment from the scope of its legal authorization. It should neither decide that every new requirement is retroactive nor assume that every future application is valid. The specific activity, approval, and challenged obligation determine that question.

**XIII. Contract and inspection claims require their respective substantive tests**

The Court need not resolve every disputed cause-of-action issue to assess ADP's substantive showing. *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 326–28 (2015), distinguishes the absence of a Supremacy Clause cause of action from traditional equitable review, subject to statutory limits. Amicus therefore does not rest opposition on a categorical denial of all equitable preemption relief. Availability of a remedy, however, does not establish a violation.

For the Contracts Clause, ADP must establish substantial impairment and address the significant public purpose and reasonable means of any impairment. *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 411–13 (1983). The test is not merely rational-basis review. ADP's agreements should be examined for actual obligations, deadlines, regulatory contingencies, extensions, and remedies. Dkt. 28 at 31–32. Neither confidentiality nor the

existence of a private contract eliminates the need to show how the Ordinance substantially impairs a protected obligation.

ADP's inspection theory also overlooks an express limit in its principal authority. *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 161–62 (2021), distinguishes reasonable health-and-safety inspection regimes and recognizes permit-related access satisfying nexus and proportionality requirements. Article 12 of Ordinance 26-OR-19 limits inspections to compliance matters, protects unrelated secure information, and recognizes lawful judicial procedures when access is denied. Dkt. 21-1 at 26–28.

The County must comply with applicable constitutional access requirements; a CUP does not waive all property or Fourth Amendment rights. But a provision for reasonable, germane inspection is not automatically equivalent to an appropriation of access for unrelated third parties. ADP must establish the specific defect and threatened application. Its assertion of a per se taking does not justify a project-wide prohibition on every provision of the Ordinance.

**XIV. Irreparable harm and the public interest must be established concretely**

ADP promises testimony about construction contracts, its Entergy agreement, potential tenants, and commercial relationships. Dkt. 28 at 35–37. The Court should consider competent evidence actually presented, including appropriately protected confidential material. It should require identification of the imminent transaction or obligation threatened, the County requirement causing the threat, and why the resulting injury cannot adequately be remedied at law. *Winter*, 555 U.S. at 20–22.

Past expenditures and investment commitments show the project's financial importance; they do not alone establish an imminent irreparable injury attributable to the challenged law. Lost goodwill or relationships may support relief if demonstrated. Amicus does not claim that all commercial injuries are compensable, that a plaintiff must await a penalty, or that continuing construction defeats every claim of harm. The issue is the demonstrated likelihood and nature of injury before adjudication, not the size of an investment standing alone.

Public harm must likewise be evaluated rather than assumed absent. The Ordinance identifies fire and emergency response, drainage, roads, noise, neighboring-property impacts, and decommissioning concerns. Dkt. 21-1 at 1–3. Restraining review of unapproved development or material changes may allow consequences difficult to remedy after construction. That possibility requires evidence and a tailored order; it is not established merely by invoking governmental status.

The public interest includes private property, economic development, transparent government, and lawful protection of residents and infrastructure. Whether the equities and public-interest factors are merged does not eliminate any of those considerations. ADP's assertion that County counsel disclaims authority cannot substitute for evaluating what Article 17 actually preserves. The Court should protect demonstrated rights without creating a regulatory vacuum broader than necessary to prevent the injury proved.

**XV. Any relief should preserve lawful review and unchallenged protections**

If preliminary relief is warranted, it should identify the provisions, activities, and injuries involved. *St. Louis Effort for AIDS v. Huff*, 782 F.3d 1016, 1022–23 (8th Cir. 2015), rejects enjoining independently operative provisions beyond the demonstrated conflict. Article 18 expressly preserves severable provisions and applications. Dkt. 21-1 at 35. ADP also expressly declines to challenge sound-level and physical-setback requirements. Dkt. 28 at 19.

The Court should preserve independently valid approval conditions and generally applicable laws; avoid immunizing unidentified phases, affiliates, or material modifications; and distinguish any records-production obligations from land-use relief. Any order should satisfy Rule 65(d)'s specificity requirement. If relief affects Section 17.6 or administrative stays, it should address the particular constitutional defect proved rather than erase the County's authority to identify the approved baseline. Security should be considered under Rule 65(c), based on the relevant evidence and governing standards, rather than assumed unnecessary because the County response omitted a request.

For these reasons, Griffen respectfully requests denial of ADP's motion for a blanket preliminary injunction. Alternatively, he requests relief confined to proven unlawful provisions or applications, preserving lawful status determinations, protected existing approvals, and review of future development to the extent allowed by law. The Court should not convert the parties' disputed characterizations into an unlimited exemption from Ordinance 26-OR-19.

Respectfully submitted,

Karla M. Burnett
Karla M. Burnett, Ark. Bar No. 94130

and

Danny R. Williams
Danny R. Williams, Ark. Bar No. 93148
323 Center Street, Suite 1205
Little Rock, AR 72201
Telephone: (501)580-5380
Telephone: (501)413-5714
karlamburnett@gmail.com
dwilliamslaw.pi@gmail.com
Attorneys for County Judge-elect Wendell Griffen

CERTIFICATE OF SERVICE

I, Karla M. Burnett, counsel for the Amicus Curiae, hereby certify on this 16th day of November, 2026, that the foregoing pleading was electronically filed through the CM/ECF system pursuant to Rule 5(b)(2)(E) of the Federal Rules of Civil Procedure and by email transmission to email addresses intended to give prompt notice to all Parties.

Karla M. Burnett
Karla M. Burnett